# CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY *v.* CITY OF MINNEAPOLIS.

## ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 150. Argued December 19, 1913.—Decided February 24, 1914.

Railroad corporations may be required, at their own expense, not only to abolish grade crossings, but also to build and maintain suitable bridges or viaducts to carry highways, newly laid out, over their tracks or to carry their tracks over such highways.

This rule has been declared as the established law of the State of Minnesota by its highest courts.

The same rule applies to a highway laid out to increase the advantages

of a public park. Such a highway is a crossing devoted to the public use. *Shoemaker* v. *United States*, 147 U. S. 282.

The same rule also applies where the crossing is a canal or water-way connecting other waters and although within a public park; the fact, and not the mode, of public passage, controls.

The condemning of a strip of the right-of-way of a railroad company and compelling that company to build at its own expense a bridge over the part so taken so as to permit a municipality in Minnesota to construct a canal connecting two lakes all within the limits of a park devoted to public recreation is not an unconstitutional taking of private property without due process of law within the meaning of the Fourteenth Amendment.

115 Minnesota, 460, affirmed.

THE facts, which involve the determination of whether the condemnation of a part of the right-of-way of a railroad company, and compelling it, at its own expense, to construct a bridge over a waterway connecting two lakes within a park, amounts to a taking of property without compensation within the meaning of the due process clause of the Fourteenth Amendment, are stated in the opinion.

*Mr. F. W. Root,* with whom *Mr. Burton Hanson* was on the brief, for plaintiff in error:

The state Supreme Court erred:

In holding that the cost of the bridge required to carry the railway tracks over the canal, need not be included in the award of damages to the plaintiff in error, for the taking of a part of its right-of-way for canal purposes.

In holding, in violation of the Fifth Amendment, that such taking of property without making full compensation sufficient to include not only the value of the land taken, but all resulting expense of the construction and maintenance of the bridge, did not constitute a taking of private property, for public use, without just compensation.

In holding, in violation of § 1, of the Fourteenth Amendment that the taking of the property of the plaintiff in error, without making such full compensation, did not deprive it of its property without due process of law, and

did not deny to plaintiff in error the equal protection of the laws.

The city seeks to take the easement across said right-of-way, for the purpose of constructing and maintaining therein a canal for pleasure boating, connecting Lake Calhoun and Lake of the Isles, the level of whose waters is about eighteen feet below the level of said railway tracks; and as an immediate and direct result of such taking an expensive bridge is required to carry the railway tracks over such canal.

The cost of such bridge, if forced upon the Railway Company, will constitute a taking of its property.

There is not any special statutory provision of Minnesota excepting this case from the general rule; but it is claimed that the taking here is an exercise of its police power, and that such power may be exercised without compensation for property taken or damaged.

In a condemnation proceeding under the right of eminent domain, the property owner is entitled to full compensatory damages, which includes, not only the value of the property actually taken, but also all consequential damage to the remaining property. A denial of damage for the cost of such bridge is a taking of the property of the Railway Company for public use without just compensation, in violation of both the Federal and state Constitutions.

There is no question of public health or safety, no question of danger to anyone. The strip of land taken from the Railway Company is to be used for a canal,—a waterway,—excluding consideration of a crossing of the tracks at grade. So no element of danger appeals to the police power.

A bridge is required, not to relieve the public from dangers incident to the crossing of railway tracks at grade, but because the land is to be used for a canal, leaving a gap in the railroad.

There is nothing to show that the connecting of these two lakes is a matter of such importance to the general public, a matter so vitally affecting the general welfare of the community, as to bring the enterprise within the principle of police power.

Each of these lakes was navigable for pleasure boats without a canal.

The favored few, who may be financially able to provide themselves with pleasure boats upon either lake, and who may have the time and desire to occasionally use this canal, do not constitute the general public.

The proposed canal is not in any way designed to secure the public safety, health or welfare, nor will the opening of such canal operate upon any existing evil that injuriously affects the safety, health, morals or general welfare of the community.

The canal is purely artificial and its sole purpose, as found by the state Supreme Court, is to enhance the usefulness of the lakes (connected thereby), in affording opportunity to the public for recreation and pleasure.

The Railway Company has thus far been required to expend nearly sixteen thousand dollars in original construction, and an unknown amount must also be expended in future maintenance, merely to provide an occasional amorous couple with temptation to prolong their fondlings, perhaps their courtship, by passing from the wearisomeness of one lake into the scenery of another.

The cases cited by defendant in error are not apposite. They involve public safety, but in this case there is no question of public safety, nor is there any state law affecting this question.

*Mr. C. J. Rockwood* for defendant in error:

Railway companies must adapt their tracks to the public convenience. When changes in the construction or in method of operation become necessary to the com-

munity welfare and convenience, the companies must
make them at their own cost.

Compensation to a railway company in eminent domain
proceedings need not include the resultant expense of
adapting the company's tracks to the changed conditions.

These doctrines are merely expressions of the police
power, which is the power to subordinate the individual
interest to the community interest in matters of high
importance.

For cases imposing on railways the duty of separat-
ing grades, or adopting other safety devices, at their
own expense, see *Minneapolis* v. *St. Paul, Minn. & Mani.
Ry. Co.*, 35 Minnesota, 131; *Minneapolis* v. *Minn. &
St. L. Ry. Co.*, 39 Minnesota, 219; *St. P., M. & M. Ry. Co.*
v. *District Court*, 42 Minnesota, 247; *Minneapolis* v. *St.
P., M. & M. Ry. Co.*, 98 Minnesota, 380, aff'd, 214
U. S. 498; *Duluth* v. *Nor. Pac. Ry. Co.*, 98 Minnesota,
429, aff'd, 208 U. S. 583; *Faribault* v. *W., M.. & P. Ry.
Co.*, 98 Minnesota, 536; *Minneapolis* v. *Minneapolis St.
Ry. Co.*, 115 Minnesota, 514; *Twin City Separator Co.* v.
*C., M. & St. P. R. Co.*, 118 Minnesota, 491; *N. Y. &
N. E. R. Co.* v. *Bristol*, 151 U. S. 556; *C., B. & Q. Ry. Co.* v.
*Chicago*, 166 U. S. 226; *Detroit F. W. & B. I. R. Co.* v.
*Osborn*, 189 U. S. 383; *St. L. & S. F. R. Co.* v. *Fayetteville*,
75 Arkansas, 534; *Woodruff* v. *Catlin*, 54 Connecticut, 277;
*Cleveland* v. *City Council*, 102 Georgia, 233; *C. & N. W. R.
Co.* v. *Chicago*, 140 Illinois, 309; *C., B. & Q. R. Co.* v.
*Chicago*, 149 Illinois, 457, aff'd, 166 U. S. 226; *Lake
Erie & W. R. Co.* v. *Shelley*, 163 Indiana, 36; *N. Y. C. &
St. L. R. Co.* v. *Rhodes*, 171 Indiana, 521; *Boston* v. *County
Com'rs*, 79 Maine, 386; *C., B. & Q. R. Co.* v. *State*, 47
Nebraska, 549; *Ry. Co.* v. *Sharpe*, 38 Oh. St. 150; *Thorpe* v.
*Rutland &c. R. Co.*, 27 Vermont, 140; *C., M. & St. P. R.
Co.* v. *Milwaukee*, 97 Wisconsin, 418.

The measure of damages, in the absence of a statute on
the subject, in taking an easement for the crossing of a

railway for highway purposes, does not include the cost of bridges and other safety devices. Cases *supra* and *State* v. *District Court*, 42 Minnesota, 247; *C., I. & W. Ry. Co.* v. *Connersville*, 170 Indiana, 316, aff'd, 218 U. S. 336; *L. & N. R. Co.* v. *Louisville* (Ky.), 114 S. W. Rep. 743; *Albany N. R. Co.* v. *Brownell*, 24 N. Y. 345; *People* v. *N. Y. C. & H. R. R. Co.,* 156 N. Y. 570; *Lehigh V. R. Co.* v. *Canal Board*, 204 N. Y. 476; *So. K. R. Co.* v. *Oklahoma*, 12 Oklahoma, 82.

As to the right of the public to convenient crossings and the duty of protection to the public existing at common law, see *City* v. *St. P., M. & M. R. Co.*, 98 Minnesota, 380, 402; *Chicago & E. R. Co.* v. *Luddington*, 175 Indiana, 35; *Pittsburgh, C., C. & St. L. Co.* v. *Gregg*, 102 N. E. Rep. 691.

The same rule applies to waterways natural and artificial. *C., R. & Q. R. Co.* v. *Illinois*, 200 U. S. 561; *West Chicago St. Ry. Co.* v. *People*, 201 U. S. 506, affi'g 214 Illinois, 9; *Union Bridge Co.* v. *United States*, 204 U. S. 364; *C., B. & Q. R. Co.* v. *Supervisors*, 182 Fed. Rep. 291; *C. & E. R. Co.* v. *Luddington*, 175 Indiana, 35; *Mason City &c. R. R. Co.* v. *Supervisors*, 144 Iowa, 10; *Lehigh V. R. Co.* v. *Canal Board*, 204 N. Y. 476.

Lands and waters reserved for the recreation of the people are devoted to a public use; a use as fully entitled as any other to the protection of the law. *Lamprey* v. *State*, 52 Minnesota, 181; *State Park Commissioners* v. *Henry*, 38 Minnesota, 266; *Shoemaker* v. *United States*, 147 U. S. 282; *Smart* v. *Aroostook L. Co.*, 103 Maine, 37; *Attorney General* v. *Woods*, 108 Massachusetts, 436; *Attorney General* v. *Williams*, 174 Massachusetts, 476; *Pittsburgh &c. R. R. Co.* v. *Gregg*, 102 N. E. Rep. 961; *Grand Rapids* v. *Powers*, 89 Michigan, 94; *People* v. *Adirondack R. Co.*, 160 N. Y. 248, aff'd 176 U. S. 335; *Re City of New York*, 167 N. Y. 624, affi'g 57 App. Div. 166; *Lyon* v. *Columbia W. P. Co.*, 82 So. Car. 181; *Madson* v. *Spokane &c. Water Co.*, 40 Washington, 414.

Mr. Justice Hughes delivered the opinion of the court.

This is a writ of error to review a judgment of the Supreme Court of the State of Minnesota which affirmed a judgment entered in a controversy submitted upon an agreed statement of facts. The statement, in substance, shows:

Within the limits of the City of Minneapolis are Lake Calhoun, Lake of the Isles and Cedar Lake, lying in close proximity to each other and used by the public for pleasure boating and other recreations. The City, having acquired for park and parkway purposes the shores of Lake Calhoun and Lake of the Isles, and a portion of the shores of Cedar Lake, together with large tracts of land in the vicinity, is engaged in constructing two canals which will connect the lakes and will greatly enhance their usefulness to the public. Between Lake Calhoun and Lake of the Isles is a strip of land, six hundred feet wide in its narrowest part, through which one of these canals is to be opened. Along this strip and near its center lies the right-of-way—one hundred feet in width—of the appellant, the Chicago, Milwaukee & St. Paul Railway Company, which is used by it in the operation of its road. The City, in order to provide for the canal and walks on either side, seeks to condemn an easement in a piece of land one hundred feet wide across the right-of-way. The two lakes are now connected by a small water-course which crosses the right-of-way about fifty-nine feet from the center of the proposed canal and is carried under the railway tracks by a pipe about three feet in diameter. The construction of the canal will render the water-course and pipe useless and permit the closing of this channel. At the point where the land is to be taken by the City, the railway tracks are upon an artificial embankment about eighteen feet above the established level of the

water in the lakes.  The City's improvement will require
the construction of a bridge to carry the tracks across the
canal and walks.  The agreed value of the mere land pro-
posed to be taken, irrespective of the cost of the bridge, is
the sum of ten dollars; and the estimated cost of building
a bridge in accordance with plans prepared by the City
and accepted by the Railway Company is the sum of
$18,513.  It is agreed that an adequate bridge for railway
purposes, built according to the plans usually adopted by
the Railway Company, would cost only $15,969.  The
difference in cost, or $2,544, is due to ornamental features,
and this amount it is agreed that, in any event, the City
shall pay.  For the purposes of this proceeding, the Rail-
way Company conceded the authority of the City to take
the described land under the power of eminent domain;
and it was agreed accordingly that the City should take
the land and construct the canal and walks, and that the
Railway Company should build the bridge after the
City's plans; but no claim for damages or compensation
to which the Railway Company was entitled under the
law by reason of the taking was waived.

The controversy submitted was as to the amount which
the Company should receive.  It was contended by the
Company that it should be paid (1) the sum of ten dollars
as the agreed value of the land taken, (2) the entire cost
of the bridge, and (3) such further sum as would be suffi-
cient to maintain the bridge.  It was also insisted that
to divest it of its property without such payment would
be a violation both of the state constitution and of § 1
of the Fourteenth Amendment to the Federal Constitu-
tion.  In the court of first instance it was held that the
Company was entitled to recover only the sum of $2,554,
being the value of the land and the cost of the ornamental
features of the bridge; and this judgment was affirmed
by the Supreme Court of the State.  115 Minnesota, 460.

The question thus presented is whether the refusal

to allow compensation for the cost of constructing and maintaining the necessary railroad bridge across the gap in the right-of-way, made by the building vof the canal, amounts to a deprivation of property without due process of law.

It is well settled that railroad corporations may be required, at their own expense, not only to abolish existing grade crossings but also to build and maintain suitable bridges or viaducts to carry highways, newly laid out, over their tracks or to carry their tracks over such highways. *N. Y. & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 556, 567; *C., B. & Q. R. R. Co.* v. *Chicago*, 166 U. S. 226, 252, 255; *C., B. & Q. R. R. Co.* v. *Nebraska*, 170 U. S. 57; *Northern Pacific Ry. Co.* v. *Duluth*, 208 U. S. 583, 597; *St. P., Minn. & Man. Ry. Co.* v. *Minnesota*, 214 U. S. 497; *C., I. & W. Ry. Co.* v. *Connersville*, 218 U. S. 336, 343, 344. See also *Detroit &c. Railway* v. *Osborn*, 189 U. S. 383; *New Orleans Gaslight Co.* v. *Drainage Com'n*, 197 U. S. 453, 462; *C., B. & Q. Ry. Co.* v. *Drainage Com'rs*, 200 U. S. 561, 592, 593; *Atlantic Coast Line* v. *Goldsboro*, decided this day, *post*, p. 548. The rule, as established in the State of Minnesota, was thus declared in the case of *State ex rel. Minneapolis* v. *St. P., Minn. & Man. Ry. Co.*, 98 Minnesota, 380 (see 115 Minnesota, p. 466): "A railroad company receives its charter and franchise subject to the implied right of the State to establish and open such streets and highways over and across its right of way as public convenience and necessity may from time to time require. That right on the part of the State attaches by implication of law to the franchise of the railroad company, and imposes upon it an obligation to construct and maintain at its own expense suitable crossings at new streets and highways to the same extent as required by the rules of the common law at streets and highways in existence when the railroad was constructed." In that case, it appeared that long after the construction of the railroad, the City of Minneapolis had laid

out a street across the railroad right-of-way, building at its own cost a bridge over the railroad tracks. After the bridge had been maintained for several years by the City it was destroyed by fire, and the City then demanded that the railroad company should build a new one. This demand the state court sustained; and, mandamus having thereupon been awarded (101 Minnesota, 545), the case was brought to this court, one of the grounds being that the action of the State deprived the company of its property without due process of law. The judgment was affirmed (*St. P., Minn. & Man. Ry. Co.* v. *Minnesota,* 214 U. S. 497), this conclusion being reached upon the authority of *Northern Pacific Ry. Co.* v. *Duluth,* 208 U. S. 583. Although the *Duluth Case* was earlier in this court, the decision therein by the Supreme Court of the State immediately followed that of the same court in the *Minneapolis Case* and applied the principle which had been there announced. *State ex rel. Duluth* v. *Northern Pacific Ry. Co.,* 98 Minnesota, 429. The facts were that after the railroad had been built, a street had been opened across the right-of-way and subsequently a viaduct for the crossing had been constructed at the joint expense of the City and the railroad company, the former agreeing to maintain it. Later, the City, repudiating the agreement, insisted that the company should repair the viaduct at its own expense. The state court entered judgment for the City, holding that the obligation to construct and maintain the viaduct rested upon the railroad company and that hence the contract was invalid. This court affirmed the judgment saying: "As the Supreme Court of Minnesota points out in the opinion in 98 Minnesota, 380, . . . the state courts are not altogether agreed as to the right to compel railroads, without compensation, to construct and maintain suitable crossings at streets extended over its right of way, after the construction of the railroad. The great weight of state au-

thority is in favor of such right. (See cases cited in 98 Minnesota, 380.) There can be no question as to the attitude of this court upon this question, as it has been uniformly held that the right to exercise the police power is a continuing one; that it cannot be contracted away, and that a requirement that a company or individual comply with reasonable police regulations without compensation is the legitimate exercise of the power and not in violation of the constitutional inhibition against the impairment of the obligation of contracts. . . . In this case the Supreme Court of Minnesota has held that the charter of the company, as well as the common law, required the railroad, as to existing and future streets, to maintain them in safety, and to hold its charter rights subject to the exercise of the legislative power in this behalf, and that any contract which undertook to limit the exercise of this right was without consideration, against public policy and void. This doctrine is entirely consistent with the principles decided in the cases referred to in this court."

In *C., I. & W. Ry. Co.* v. *Connersville*, 218 U. S. 336, 343, *supra*, a street was opened through an embankment upon which the railroad tracks were laid. At the time of the construction of the railroad that part of the embankment was outside the City limits. But the City was extended, and the intersecting street was laid out in order to provide a suitable means of communication between the parts of the City on either side of the embankment. On reviewing the judgment entered in the condemnation proceeding, it was held that there was no violation of the Fourteenth Amendment in refusing to allow to the company the cost of building a bridge for its tracks over the opening made by the street. "The question," said the court, "as to the right of the railway company to be reimbursed for any moneys necessarily expended in constructing the bridge in question is, we think, concluded

by former decisions of this court. . . . The railway company accepted its franchise from the State, subject necessarily to the condition that it would conform at its own expense to any regulations, not arbitrary in their character, as to the opening or use of streets, which had for their object the safety of the public, or the promotion of the public convenience, and which might, from time to time, be established by the municipality, when proceeding under legislative authority—within whose limits the company's business was conducted. . . . Without further discussion, . . . we adjudge upon the authority of former cases, that there was no error in holding that the City could not be compelled to reimburse the railway company for the cost of the bridge in question."

Under the doctrine of these decisions, it necessarily follows that if the City of Minneapolis had opened a public road through the embankment of the plaintiff in error, the latter would have had no ground to complain that its constitutional rights had been violated because it was compelled to bridge the gap at its own cost. No different rule could be applied because the highway was laid out in order to increase the advantages of a public park. In this aspect, it would be equally a crossing devoted to the public use (*Shoemaker* v. *United States*, 147 U. S. 282, 297); and we see no basis for a distinction in principle in the case of an intersecting public road opened under competent authority because such a highway might lead to public recreation grounds instead of to places of business, or might connect lakes instead of avenues.

If there is a distinction in the present case, it must lie in the fact that the crossing is an artificial waterway instead of a road. But it is none the less a public highway, established to afford an appropriate place of public passage. Walks are provided for those who go afoot, and it does not concern the plaintiff in error that others go in

boats instead of vehicles. "The way sought to be established," said the Supreme Court of Minnesota, p. 465, "a canal or waterway, with walks along each side" was "clearly a public way, subject to the rules governing public ways." It cannot make a difference in the constitutional rights of the Railway Company that this way was not constructed entirely, or chiefly, of solid earth; it is the fact, and not the mode, of public passage that is controlling. The case must be regarded as being one of a public crossing provided by law; and the authorities we have cited lead to the conclusion that the State, without infringing the guaranties of the Federal Constitution, could require the Railway Company to make suitable provision for carrying its tracks over the crossing without compensation.

The judgment is affirmed.

*Affirmed.*