SYRACUSE GRADE CROSSING COMMISSION, Plaintiff, v. DELAWARE, LACKAWANNA & WESTERN RAILROAD COMPANY et al., Defendants.*

Supreme Court, Onondaga County, July 15, 1940.

* Mod. and affd. with memorandum 263 App. Div. 930, affd. without opinion 290 N. Y. 632.

*James C. Tormey* and *John H. Walrath* for plaintiff.

*Gay H. Brown* and *Sherman C. Ward* for Public Service Commission, defendant.

*John H. Hughes* and *Basil B. Aylesworth* for Delaware, Lackawanna & Western Railroad Company, defendant.

*Stewart F. Hancock* and *Morris Berman* for Wilson & Greene Lumber Co., Inc., defendant.

*Benjamin Gingold* and *Bert E. Bernstein* for B. & R. Iron & Metal Co., Inc., defendant.

*P. Sidney Hand* for Dold Packing Corporation, defendant.

*Truman H. Preston* for County of Onondaga, defendant.

ERNEST I. EDGCOMB, Official Referee. This is an action for a declaratory judgment. The controversy between the parties grows out of proceedings which have been instituted for the elimination of certain railroad crossings at grade within the city of Syracuse, and relates to the right of the tenants and fee owner of certain lands, which the Public Service Commission has found necessary for the completion of said project, to compensation therefor.

The Syracuse, Binghamton and New York Railroad Company, and the Oswego and Syracuse Railroad Company, are owners of separate railroads, a portion of which are located in the city of Syracuse. For many years these railroads have been operated as one by the Delaware, Lackawanna and Western Railroad, under leases from the owners running from their respective dates for and during the corporate life of the lessee, and any extension thereof.

The tracks cross many streets and highways in the city at grade. Realizing the menace and inconvenience resulting from such a situation, the municipal authorities, and other public-spirited citizens, have, for years, attempted to bring about an elimination of such crossings. These efforts have at last borne fruit. The Public Service Commission of the State has ordered a separation of grades, and has approved plans therefor. These plans call for the elevation of the tracks on substantially their present location, with some slight deviation, and make it necessary to acquire an easement in certain lands owned by the railroad, and lying outside of its present right of way, and which are not used for any purpose connected with the operation of the railroad. These lands have been leased to third parties, and are used by such lessees in their own business. The owners and

tenants both claim to be entitled to compensation for their interest in the property thus to be taken. The Syracuse grade crossing commission, and the Public Service Commission take the opposite view.

A bona fide existing controversy has thus arisen which places the legal rights of the disputants in doubt. All parties are in court. The issues involved can be tried and settled in the present action, without sending the contestants elsewhere for relief. A declaratory judgment will serve to quiet and stabilize the disputed jural relations of the parties regarding their present or prospective rights and obligations. Under these circumstances, the remedy selected for the solution of this controversy would seem to be an especially appropriate one. (*Woollard* v. *Schaffer Stores Co.*, 272 N. Y. 304, 312; *Post* v. *Metropolitan Cas. Ins. Co.*, 227 App. Div. 156, affd. 254 N. Y. 541; *Union Trust Co.* v. *Main & South Streets Holding Corp.*, 245 App. Div. 369; *Strobe* v. *Netherland Co.*, 245 App. Div. 573, 575.)

While concededly the court has jurisdiction of the cause of action, it is not necessarily bound to retain it. The granting or withholding of a declaratory judgment rests in the sound discretion of the court. (Rules Civ. Prac., rule 212; *Woollard* v. *Schaffer Stores Co., supra; Newburger* v. *Lubell*, 257 N. Y. 383, 386; *Dun & Bradstreet, Inc.,* v. *City of New York*, 276 N. Y. 198, 206–207; *Kittinger* v. *Churchill Evangelistic Assn., Inc.*, 239 App. Div. 253, 257.)

A vast and much needed public improvement, which will inure to the benefit of the city of Syracuse, and its inhabitants, and afford better accommodations and greater safety to the public, has finally gotten under way. The contract for the project has been let. Delay in the progress of the work is threatened until the rights of the parties are determined. The present action affords a speedy and inexpensive method of adjudicating the legal disputes which have arisen. The parties have signified their willingness to have their matters of difference settled in this action, rather than be compelled to resort to some other remedy which might be open to them. Under these circumstances, the court will not hesitate to retain jurisdiction of the action. Any other course would be a clear abuse of discretion.

The Public Service Commission has found that the lands in question, which abut the present railroad right of way " will necessarily be occupied by elimination structures and will become a part of the railroad company's right of way when the elimination is completed." There is no question as to the correctness of this finding. As before noted, these lands, with

the exception of one parcel, have been leased to third parties, and are now in possession of the lessee.

Is the owner and tenant of these lands bound to voluntarily surrender the same, and release their present rights therein, without reward or hope of reward, so that the same may be used for the furtherance of this public improvement? The correct answer to that question involves an examination of the Syracuse Grade Crossing Act (L. 1928, ch. 825), as well as the Fifth Amendment to the Federal Constitution, and section 7 of article I of the State Constitution.

Upon the adoption of the constitutional amendment authorizing the creation of a debt for the elimination of grade crossings (N. Y. Const., art. VII, § 14), the Legislature passed a general act to provide appropriate relief to the entire State (L. 1928, ch. 678), except the cities of Syracuse, Buffalo and New York, and three other acts covering elimination projects in each of those three cities respectively. (L. 1928, ch. 825, 679, 677.) The Syracuse Grade Crossing Act prescribes the procedure to be followed when crossings at grade are to be done away with in that city, as well as the method by which the expense of the project is to be defrayed. This act, like those relating to other parts of the State, provides a full and complete plan for such elimination, and for the payment of the expense connected therewith, and defines the rights of the parties. It is exclusive of all other remedies. (*Matter of Grade Crossing* [*Lehigh Valley R. R. Co.*], 264 N. Y. 195, 197; *Askey & Hager, Inc.* v. *State of New York,* 240 App. Div. 451, 454, affd. 266 N. Y. 587.)

Section 8 of the Syracuse Act states that any lands or easement rights which the Public Service Commission deems necessary for the elimination of any crossing shall be acquired by the railroad corporation, or by the Syracuse commission. The statute then goes on to say that if any lands or easements, necessary for the proper operation and maintenance of the railroad but not needed for street or highway purposes (and none of the lands in question are required for the latter purpose) are not purchased by the railroad company, with the approval of the Syracuse commission and the county of Onondaga, they shall be acquired by either the railroad company or the Syracuse commission " by condemnation under the condemnation law," and in case the commission institutes the proceeding, title to the property shall vest in the State of New York upon the filing of the oath of the commissioners of condemnation.

If the property is purchased, it must be done by the railroad company, and not by the commission, although that body, as

well as the county, must approve the bargain. If the land cannot be bought to advantage, and resort to condemnation is necessary, either the railroad or the Syracuse commission may act. The statute places no more responsibility on one than on the other. If one acts, the other is relieved of responsibility. If title is acquired by deed, then no condemnation proceedings are necessary.

But here the railroad company already owns the required lands. It is not necessary to acquire that which one already possesses. The railroad can not go out and buy its own property, or condemn its own land.

But the company says that the Syracuse commission could condemn the property, in which case the title would vest in the State. If that should be done it is important to note the provisions of subdivision 2 of section 8 of the Syracuse Act, which permits the railroad company, if it deems any lands or rights acquired by the Syracuse commission necessary for the proper operation and maintenance of its railroad, to apply to the commission for a conveyance of such lands or rights, and authorizes the Syracuse commission, with the approval of the Public Service Commission, to certify to the board of commissioners of the land office the fact that said lands or rights are necessary for the proper operation and maintenance of the railroad, and are not necessary for street or highway purposes, and that such lands or rights may be conveyed to the railroad company upon such terms and conditions as may be prescribed by the Syracuse commission, with the approval of the Public Service Commission, whereupon the board of commissioners of the land office is required to convey the property to the railroad company.

If the railroad company's position is correct, we have the anomalous situation of the Syracuse commission being compelled to condemn the company's land for the company's benefit, as well as that of the State, and which property, upon the completion of the elevation project, will be used exclusively by the company for the purposes of its incorporation, and although title, in such a case, would vest in the State, the land board could be compelled to deed it back to the company. It hardly seems possible that the Legislature ever intended to permit such a circuitous and useless transfer of title, only to have it come back where it started from, merely to enable the company to receive pay for that which it already owns.

True the lands in question are not being used at present for railroad operating purposes, and have not been for some

time, unless it can be said that the present tenants, because of their location contiguous to the railroad, use the facilities of the company to receive and ship their products, which business would likely be lost to the company if the lands were idle, or otherwise occupied, and thus increase the revenue of the company. While concededly a corporation may not take title to a large amount of real estate, and hold the same indefinitely for speculation or use in ways not connected with the business for which it was incorporated, it is common knowledge that many railroad companies, as well as other corporations, acquire various parcels of land, which at the moment they do not need and have no use for. In so doing, it can not be said that the corporation has no power to hold these lands pending a time when they may be needed, or that, in the meantime the owner may not rent the property, and thus obtain a revenue therefrom, or may not sell and convey the property and give good title; nor can it be claimed that the property can be taken from the owner against his will without just compensation. (*Yates* v. *Van De Bogert,* 56 N. Y. 526, 530.) The only limit to the power of a railroad company to take lands is the reasonable necessity of the corporation in the discharge of its duty to the public. In determining such necessity the corporation is given great latitude and may take into consideration both its present and prospective needs. (*Matter of New York Central & H. R. R. R. Co.,* 77 N. Y. 248.)

Land deeded to a railroad company is presumed to have been acquired for the ends of its organization. (*Yates* v. *Van De Bogert, supra.*) Its temporary use for nonrailroad purposes does not work an abandonment of the property for the public use with which it is impressed. The company may still have occasion to occupy it in the future and to use it for purposes connected with its incorporation. (*Roby* v. *New York Central & H.R.R.R. Co.,* 142 N. Y. 176; *Kip* v. *New York Central R. R. Co.,* 140 Misc. 62, affd. 236 App. Div. 654, affd. 260 N. Y. 692.)

There can be no doubt that, if the occasion had ever arisen in the past when any of this property was necessary for the operation of the railroad, the company would have hesitated to so employ it. Such an occasion has now arisen. The land is already owned by the company, and there is no occasion for its being reacquired, either by treaty or condemnation. I find no provision in the statute which requires the Syracuse commission to condemn these lands.

This is not the case of taking private property for public use without just compensation, which is contrary to the funda-

mental law of the land and the one's sense of natural justice. The property is already dedicated to the public use, and is presumed to have been acquired for that purpose; it is owned by the same corporation which will use it in the future. The owner has not been deprived of its use; true it will not be able to use it in the future as it has in the past, but its past use has not been in strict accordance with the object for which its owner was incorporated and was authorized to take and hold property.

Furthermore in doing away with grade crossings of public streets the Legislature may impose the entire cost upon the railroad company without infringing its constitutional rights. (*Erie R. R. Co.* v. *Board of Public Utility Commrs.*, 254 U. S. 394.)

It is not claimed, nor can it well be asserted, that the railroad company is entitled to be compensated for that portion of its present right of way which will be used in the elevation of its tracks. I can see no difference in principal in the use of such lands and the parcels in question. The mere fact that the project necessitates the taking of lands not used at present for the railroad purposes does not change the situation. The statute makes no distinction between the two classes of property.

The railroad company calls attention to the fact that under the present Constitution, and under the Syracuse Grade Crossing Act, as amended by chapter 289 of the Laws of 1939, the expense connected with this improvement must be paid by the State in the first instance, and that the company will be liable over to the State by way of reimbursement only for:

1. The entire amount of the railroad improvements not an essential part of the elimination project, and

2. The amount of the net benefit to the railroad company from the elimination which in no event shall exceed 15% of the expense of such elimination, exclusive of all incidental improvements.

The company argues with much force that, if these lands were owned by a third party, the owner would be entitled to compensation, and the price paid would go into and form a part of the cost of elimination, and that the company would not be compelled to pay more than 15% of that amount, while if it voluntarily contributes these lands, from which it is now receiving a nonoperating revenue, it will lose its revenue and will be called upon to pay more than its share of the cost of this improvement. There is much to be said in favor of the justice of this position. But we are here dealing with statutory rights,

and not with what one may deem to be a fair and equitable solution of a problem. As before noted the Legislature has the legal right to impose the entire expense of doing away with grade crossings upon the railroad company. The answer to the company's argument is that these lands are not owned by a third party, but by the company itself, and there is no need of reacquiring them. There is no provision in the statute by which the company can be reimbursed for its donation to this project.

*Matter of State Comm. of Highways* (*Town of Ripley*), (239 N. Y. 279) largely relied upon by the railroad company, is not controlling here. In that case it was held that the Public Service Commission, on abolishing a grade crossing under section 91 of the Railroad Law, had no power to appropriate the land of the railroad company for an abutment, where such appropriation was not necessary as an engineering proposition. The expense of the project was apportioned between the railroad company, the municipality and the State by section 94 of the act. It was said (p. 283) that if the company was compelled to donate a part of its right of way for the improvement, it would be called upon to pay more than its share of the project, and that the very purpose of making the public share its portion of the expense would thus be rendered futile. That decision turned on the construction of the statute under which the improvement was made. There is no provision in section 91 of the act requiring the company to acquire any lands which might be needed for the enterprise. Not so in the present case.

Carried to its ultimate conclusion, if the *Ripley* case (*supra*) is controlling, it would entitle the railroad company to compensation for that part of its present right of way which is to be used in the elevation project, because the company is called upon to furnish that land for the enterprise. No such claim is or can be made.

I have, therefore, reached the conclusion that the railroad company is not entitled to compensation for the land lying outside its right of way and which is not being used for railroad purposes, but which is necessary for the elevation project, and that the Syracuse commission can not be compelled to condemn such property so far as the owner of the fee is concerned.

The company also claims to be entitled to compensation for damages to property not actually appropriated which is caused by cutting off access thereto by reason of the change in grade of the adjoining highways made necessary by the depression of the streets or the elevation of the tracks. If the company

has any such claim that is a matter to be determined by the Court of Claims. (L. 1928, ch. 825; *Askey & Hager, Inc.*, v. *State of New York,* 240 App. Div. 451; affd. 266 N. Y. 587, *supra.*)

In view of the conclusion already reached that the fee owner of these lands is not entitled to compensation for the lands appropriated for this improvement, it would become unnecessary to determine whether or not, under the peculiar form of the lease from the underlying railroad companies to the Delaware, Lackawanna Railroad Company, title to the leased lands vests in the lessee, except for the fact that a claim may be made by one or more of the companies for consequential damages to property not actually taken for the elimination project, and if so and if the Court of Claims should determine that there were any such recoverable damages, it would be desirable to have an adjudication as to who was entitled to receive such compensation.

As before noted the lands in question have been leased by the underlying railroads, along with all their other property of every name and nature, to the Delaware, Lackawanna and Western Railroad Company for the full continuance of its charter, and all renewals thereof. It has been held by the courts of New Jersey that under a similar lease title to the leased lands vested in the lessee. (*United States Pipe Line Co.* v. *Delaware L. & W. R. R. Co.,* 62 N. J. L. 254, 261.) I think that the conclusion reached in that case should be followed here, and that it should be held that the title to all the lands originally acquired by either of the underlying railroads is now vested in the Delaware, Lackawanna and Western Railroad Company. The original owners saw fit to divest themselves of every interest in their property and to convey the same to their lessee for and during its corporate life, and any and all extensions thereof. I think it may well be said that by reason of this transfer title to the property vests in the lessee.

This brings us to the claim of the defendants who are tenants of these various parcels of land. What has been said regarding the owner does not necessarily apply to the tenants. The tenant does not stand in the shoes of the owner. The right of the two are separate and distinct to a large extent.

A tenant or lessee has an interest in leased property, and if all or any part thereof is taken for public use, he is entitled to be paid for his loss. Where leased property is taken, the award should be apportioned between the lessor and the lessee, according to their respective interests, the former being entitled

to compensation for injury to his reversion, and the latter for damage to his leasehold interest. (*Matter of Trustees of N. Y. & Brooklyn Bridge,* 137 N. Y. 95, 97; *Matter of City of New York,* 192 N. Y. 295; *Matter of City of New York [Delancey St.]* 120 App. Div. 700; *Matter of Daly,* 29 App. Div. 286; *People* v. *Thornton,* 122 App. Div. 287; *Matter of City of New York [North River Water Front],* 219 App. Div. 27, 39.)

Irrespective of whether the fee owner of the various parcels of land to be taken is entitled to compensation or not, there can be little doubt that the tenants, who are in no way obligated to provide any land or easement rights for the elimination project, are entitled to compensation for injury to their lease-hold interests which are taken, unless there is some provision in their lease, or some particular circumstance which takes the case out of the general rule.

All of these leases were made in good faith, long before the adoption of the plans in question. There is no suggestion of any ulterior motive on the part of either lessor or lessee. The tenants in most instances have erected buildings or structures on the land at their own expense.

It is true that with one exception all of the leases provide that the duration of tenure of the lessee may be terminated by either party giving to the other a thirty or sixty-day notice. The exception referred to is the Delaware, Lackawanna and Western Coal Company lease, and that instrument provides that if the land is required for railroad purposes the railroad company may repossess the property by giving a sixty-day notice. With the exception of the Pure Oil Company, which is not a defendant here, no tenant's right to possession has been terminated by the giving of the required notice, and each lease is in full force and effect. Nowhere do we find any provision which compels either party to give such notice. Whether the lease shall be terminated or not is left entirely optional with the parties, and I know of no power which can be invoked to compel either party to act unless the spirit moves him so to do.

Undoubtedly the privilege of cancellation on short notice materially affects the value of a tenant's leasehold estate, but that question is not here. The value of the lease must be determined by some other tribunal.

The question before this court is whether these tenants have any share or participation in the ownership of the lands to be taken for which they are entitled to compensation. I am convinced that they have such interest. (Condemnation Law, § 2:

*People* v. *Thornton,* 122 App. Div. 287, *supra; Matter of City of New York [Pier Old No. 49],* 227 N. Y. 119; *Matter of City of New York [North River Water Front],* 219 App. Div. 27, *supra.*)

It is elementary that private property cannot be taken without just compensation. This is forbidden by section 7 of article I of the State Constitution, and by the Fifth Amendment to the Federal Constitution. These provisions render it impossible for the rights of the individual to be sacrificed. This mandate must be obeyed. A violation thereof would be contrary to the fundamental principles of a free government, and would be an exercise of arbitrary and despotic power. (*People ex rel. New York Central & H. R. R. R. Co.* v. *Priest,* 206 N. Y. 274, 289.)

Any limitation to the free use and enjoyment of one's property constitutes such an appropriation as entitles the owner to compensation for that which has been taken from him. (*Forster* v. *Scott,* 136 N. Y. 577, 584; *People ex rel. New York Central & H. R. R. R. Co* v. *Priest, supra,* p. 288; *Arnold* v. *Hudson River R. R. Co.,* 55 N. Y. 661; *German-American Real Estate Title Guar. Co.* v. *Meyers,* 32 App. Div. 41; *Matter of Myer* v. *Adam,* 63 App. Div. 540, 544; affd. 169 N. Y. 605.)

In one of the Wilson and Greene Lumber Company leases, I find a provision which to my mind changes the general rule, and deprives that company of the right to an award for damage caused by the appropriation of its leasehold right in the property therein described. Concededly a tenant can waive or contract away his right to compensation where his property is taken. That is exactly what the Lumber Company did when it leased the triangular piece of land lying between the present right of way of the railroad, Burt Street and Renwick Avenue. This lease was made on the 18th of February, 1938. Agitation for the elimination of the Delaware, Lackawanna and Western Grade Crossings was then rife, and the parties had that contingency in mind when they made this lease, and provided what would happen if that event took place.

Paragraph 5 of this particular lease reads as follows: " Whereas the Lessor (Delaware, Lackawanna and Western Railroad Company) contemplates at some future time during the term of this lease the elimination of the grade crossings of its railroad and Burt Street, Sizer Street, Renwick Avenue and Raynor Avenue in the vicinity of said described premises, and in connection with said elimination the elevation of its tracks (adjacent to) said premises, therefore the Lessee (Wilson and Greene Lumber Company) hereby releases and agrees to

indemnify and save harmless the Lessor, and the State and municipal authorities, from any and all damages, direct and consequential, to said premises or the Lessee's leasehold interest therein, which the Lessee may sustain or be subjected to on account of any such elimination or track elevation.''

By this provision the tenant chose, in event the railroad tracks were elevated during the term of the lease, to release and save harmless the railroad company, the State and the municipal authorities, from all damage to its leasehold interest in that particular land occasioned by the elimination project. Under these circumstances the lessee is not entitled to be compensated for any damages which it may suffer by reason of the appropriation of this particular property. (*Matter of Mayor, Aldermen & Commonalty of City of New York,* 168 N. Y. 254.)

All of the parties, with the exception of the Public Service Commission, have specified in their prayer for relief the precise rights to which they deem themselves entitled, and have asked for a declaration of their rights in accordance with their demand. The Public Service Commission takes the position that the court should be limited to a finding that every question presented must be passed upon by the Court of Claims, pursuant to section 9 of the Syracuse Grade Crossing Act. I cannot agree with that contention. As already pointed out the parties are before the court, and the present action is an especially appropriate place to have their legal rights determined, with the exception of the amount of damages sustained by the owner by reason of the taking of the lands in question, and with the exception of the question whether the owners (and the tenants are owners within the meaning of that term) have sustained any damage to their property which is not taken by deed or condemnation, and if so, how much. Furthermore, the Public Service Commission has stipulated that the issues in the action may proceed to final determination and judgment on the merits. In the light of such a stipulation I fail to see how the Public Service Commission is in a position to object to the court exercising its discretion, and retaining jurisdiction of the action, and settling once for all the jural rights of the parties.

Nor can I agree with the contention of the Public Service Commission that the Court of Claims has jurisdiction to determine all these issues which are now before the court. The Court of Claims has no authority to render a judgment of condemnation or fix the damages sustained by an owner by

reason of the appropriation of his property for the elevation project. The statute requires that matter to be determined pursuant to the Condemnation Law (L. 1928, ch. 825, § 8), and proceedings under the Condemnation Law must be instituted in the Supreme or County Court. (Condemnation Law, § 4.)

In condemnation proceedings the owner is entitled, if the entire property is taken, to the fair market value of his interest therein at the time of the appropriation. If a portion only is taken, the damages to the owner are measured by the difference between the fair market value of the entire property and that which is left, including all damages to the remainder, occasioned by the use to which the portion appropriated is to be put. (*Matter of City of Rochester* [*Smith St. Bridge*], 234 App. Div. 583, and cases there cited.)

The tenants are also entitled to compensation for damages to such fixtures as have been placed upon the property by them, as would have become a part of the realty, if installed permanently by the owner of the fee. (*Matter of City of New York* [*Allen St.*], 256 N. Y. 236; *Matter of City of New York* [*Whitlock Ave.*], 278 N. Y. 276, 281; *Jackson* v. *State of New York*, 213 N. Y. 34.)

Judgment is ordered declaring the rights of the parties as indicated in this memorandum, without costs. Prepare findings, and send me for my signature.

(Supplemental memorandum, February 5, 1941.)

After giving the additional evidence received after the case was closed in the first instance most careful consideration, I have concluded to let my decision as already made stand.