LONG ISLAND RAIL ROAD COMPANY, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28291.)

Court of Claims, February 2, 1951.

1064

*Otto M. Buerger* and *Henry B. Staples* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Abe Wagman* and *Robert J. Cooney, Jr.,* of counsel), for defendant.

SYLVESTER, J. Claimant seeks damages for an alleged appropriation by the State of New York of certain of its properties in the village of Lynbrook, in connection with the elimination of a highway-railroad crossing at grade, pursuant to the State-wide Grade Crossing Elimination Act (L. 1928, ch. 678).

The lands affected were owned by the Long Island Rail Road Company, as authorized by its charter, for railroad purposes, but had been situated beyond the normal and reasonable limits of its right of way and were being used for noncarrier purposes. They are described as parcels Nos. 36 and 37 on Map No. 29, Parcel No. 38 on Map No. 30, Parcel No. 39 on Map No. 31 and Parcel No. 43 on Map No. 34-R, and were concededly necessary in the elimination project and for proper carrier purposes. The order of the Public Service Commission authorizing the claimant to acquire lands was issued on November 21, 1929, and the plans and amendatory plans were approved by it in subsequent years. The elimination work was commenced in 1938 and completed the following year.

It is well recognized that railroads may be required to eliminate grade crossings at their own expense (*Erie R. R. Co.* v. *Board of Public Utility Commrs.,* 254 U. S. 394; *Syracuse Grade Crossing Comm.* v. *Delaware, Lackawanna & Western R. R. Co.,* 197 Misc. 192, mod. on other grounds, 263 App. Div. 930, affd. 290 N. Y. 632) though liability would ensue if the taking of railroad lands was for highway or other purposes, or for use by another. (*Matter of State Comm. of Highways [Town of Ripley],* 239 N. Y. 279.) The principle applies to railroad-owned lands used for noncarrier purposes and the railroad may be required to use such lands in the elimination project without recompense. Thus, in the *Syracuse* case (197 Misc., 192, 198–199, *supra*) Judge EDGECOMB, Official Referee, said: "This is not a case of taking private property for public use without just compensation, which is contrary to the fundamental law of the land and

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

one's sense of natural justice. The property is already dedicated to the public use, and is presumed to have been acquired for that purpose; it is owned by the same corporation which will use it in the future. The owner has not been deprived of its use; true it will not be able to use it in the future as it has in the past, but its past use has not been in strict accordance with the object for which its owner was incorporated and was authorized to take and hold property."

Claimant, nevertheless, contends that the statute here applicable authorizes payment to it for its noncarrier lands and relies upon the language of its several provisions (L. 1928, ch. 678, § 5, subds. 1–4). It asserts that, in describing what lands were to be appropriated and, accordingly, paid for, those provisions do not by their terms exclude railroad properties of the kind here in question; that the Legislature in employing the word " any " in defining the property to be taken, intended to embrace all lands whether railroad-owned or not. A careful examination of those provisions, however, leads to a contrary conclusion. Within the scheme of the statute, they describe only what may be appropriated in aid of the elimination project. The mere use of the word " any " referring to lands to be appropriated, cannot in and of itself, be deemed interpretative of a legislation intention to compensate the railroad for its lands thus acquired. Subdivisions 1 to 4 simply set forth the method by which " any " lands found to be " necessary in the elimination " are to be acquired and are procedural in character.

It is thus pertinent to refer to similar language in the 1928 Syracuse Act (§ 8, subd. 1; as added by L. 1928, ch. 825) which, so far as it is material to the discussion, reads: " *any* lands or easement rights which the public service commission may deem necessary in the elimination of any crossing as prescribed by this act shall be acquired ". (Emphasis supplied.) In the *Syracuse Grade Crossing* case (*supra*) the relevant statute, despite the quoted excerption, was not construed to mean that payment was required to be made in an " elimination " for railroad-owned lands theretofore used for noncarrier purposes.

In further support of its position, claimant cites the provisions of subdivision 14 of section 5 of the State-wide act (L. 1928, ch. 678) which, it says, when read together with the prior appropriation subdivisions of that section, evidence an intention to pay the railroad for its noncarrier lands. Subdivision 14 reads as follows: " If a railroad corporation has acquired, is

acquiring or is about to acquire title to any lands or easement rights in addition to or beyond the normal or reasonable limits of its existing right of way for the operation of the railroad which the public service commission may deem necessary in the elimination of any crossing, and such lands or easement rights are in the opinion of such commission necessary for the proper operation and maintenance of the railroad of such railroad corporation and not necessary for highway, road or street purposes, same need not be appropriated as aforesaid, but may be retained or acquired by such railroad corporation, in which event such railroad corporation shall be compensated for such lands or easement rights in such an amount as may be agreed upon by and between such railroad corporation, the department of public works and the county or counties bearing a part of the cost of the elimination. Any amount so agreed upon shall be paid out of the state treasury from moneys appropriated for such elimination from the proceeds of such state bonds in the manner prescribed by this act for the payment for other lands or easement rights as to which an agreement may be made as in this act provided.''

It is suggested that this subdivision provides for compensation to the railroad for its nonoperating properties '' by agreement '' as an alternative method to '' appropriation ''; that the language '' same need not be appropriated as aforesaid '' indicates an intention that the earlier subdivisions of section 5 with respect to appropriation and claims for compensation should apply to railroad-owned properties. It will be more understandable, in arriving at a reasonable reading of subdivision 14, to consider the several Grade Crossing Elimination Acts of 1926 and 1928. The 1926 act (L. 1926, ch. 233) provided for the *acquisition by the railroad* of land at the '' direction '' of the Public Service Commission (§ 5). In 1928, that act was repealed (L. 1928, ch. 678, § 13) and the new statute applicable to State-wide properties, outside Syracuse, Buffalo and New York City, was adopted. Under the new legislation, the State acquired the property in the first instance. Since under the 1926 act, the cost of the lands acquired became part of the '' elimination expense '' and entitled the railroad to reimbursement therefrom for directed acquisitions made at the instance of the Public Service Commission, it was the evident intention of the 1928 Legislature to preserve to the railroad the required reimbursement for such directed acquisitions under the 1926 act. The result would not be attained within the procedures of

the 1928 State-wide act and would leave the railroad without recompense as in the *Syracuse* case (*supra*), were it not for the saving provision of subdivision 14.

Under the 1928 State-wide act, whereby only the State may acquire the necessary lands, the sole manner of paying the railroad would be by appropriating such lands. Were that procedure invoked as to 1926 directed acquisitions, the railroad would then request a reconveyance by the State of such lands for the proper operation and maintenance of the railroad (§ 5, subd. 10), for which it might be required to pay (§ 5, subd. 15). Obviously, then, the net result would deprive the railroad of its reimbursement. To avoid this dilemma and to obviate the successive steps of appropriation and reconveyance, it was necessary to legislate subdivision 14 into the statute so as to effectuate reimbursement '' by agreement '' and to permit the railroad to retain the properties.

Subdivision 14 of section 5 is entirely in consonance with section 12 of the act which permits the continuance of any pending condemnation proceedings under the 1926 act, and which, at the same time, assures reimbursement to the railroad.

Unlike the 1928 State-wide act, the 1928 Syracuse act prescribed, as one of the methods of acquisition, that the railroad may acquire the necessary property. Thus, it set forth that any lands which the Public Service Commission deemed necessary in the elimination of the crossings and were required for the proper operation and maintenance of the railroad, was provided to be acquired (1) by the railroad by purchase, or (2) by either the railroad or the Syracuse grade crossing commission through condemnation. Manifestly, then, there was no purpose to be served by legislating into the 1928 Syracuse Act the counterpart of subdivision 14 of the State-wide act, in order to insure reimbursement for 1926 directed acquisitions. Since the railroad could acquire the property in the first instance, the formula for its reimbursement (costs of the elimination) was not interrupted. Under the other 1928 acts; however, as already indicated, the prescribed exclusive appropriation procedure would not operate to provide reimbursement for a directed acquisition made under the 1926 act, were it not for the enactment of subdivision 14. This appraisement of the statute recognizes a legislative policy of equal dealing in all parts of the State and is in accord with the established principle of law that railroads may be required to eliminate grade crossings at their own expense (*Erie R. R. Co.* v. *Board of Public*

*Utility Commrs.,* 254 U. S. 394, *supra*). To hold in precisely similar circumstances that railroads in one locality of the State are entitled to compensation, whereas, elsewhere (e.g., Syracuse) it is to be denied, would attribute to the legislation a purpose to discriminate between localities without any apparent basis in reason for its justification.

Accordingly, no allowance can be made to this claimant for its noncarrier lands utilized in the elimination, and the claim is dismissed.

During the trial, the court (former Judge EMANUEL GREENBERG) reserved decision on the State's motion to strike out certain testimony and exhibits relating to settlement agreements purportedly executed by the railroad and various State officials, without final approval by the State Comptroller. Heretofore, a claim predicated thereon was dismissed for legal insufficiency (*Long Island R. R. Co.* v. *State of New York,* 185 Misc. 646). An enabling act thereafter permitted this appropriation claim to be heard, notwithstanding its untimely filing.

Since agreements of this character may not be received upon the issue of the value of claimant's lands (*Hopkins* v. *State of New York,* 276 App. Div. 945), and as no issue was raised by the State that the Long Island Rail Road waived its claim for compensation for the alleged appropriation, the motion to strike out the related testimony and exhibits is granted.

The motion to strike out testimony pertaining to the payment of taxes by the claimant on certain of the described parcels subsequent to the dates of the claimed " ouster " by the State, is denied, because of its relevance upon that issue.

In all other instances where decision has been reserved on the admissibility of evidence, the evidence is admitted; and on all motions where decision has been reserved, the motions are denied.

The court has viewed the property.

The foregoing constitutes the written and signed decision upon which judgment may be entered and it is therefore unnecessary to pass upon the proposed findings of fact and conclusions of law (Civ. Prac. Act, § 440).