NEW YORK CENTRAL RAILROAD COMPANY, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28761.)

Court of Claims, January 2, 1952.

*Gerald E. Dwyer, William R. Stevens* and *Arthur H. Bernstein* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*David Marcus* of counsel), for defendant.

SYLVESTER, J. This litigation arises out of an appropriation by the State in grade-crossing elimination proceedings pursuant to chapter 678 of the Laws of 1928, as amended, and the supplemental Act of 1939 (L. 1939, ch. 289), as amended. Claimant's land, identified as Parcel No. 20, was taken in connection with the project to separate the grade at Ashford Avenue, in the village of Dobbs Ferry where the Putnam Division of the New York Central Railroad intersects the highway.

The elimination, directed pursuant to the orders of the Public Service Commission made in 1936 and 1939, was accomplished by the construction of an overhead bridge, located about 145 feet south of the old crossing, which carries highway traffic over the railroad. Paralleling the railroad right of way on the westerly side is the highly trafficked Saw Mill River Parkway. Parcel No. 20 was appropriated to comply with the commission's amendatory order of October 31, 1939, which provided that " (f) A ramp shall be constructed to connect the Saw Mill River Parkway with the proposed elevated structure carrying Ashford Avenue over the tracks of the railroad substantially as shown on Exhibit 82 ". The ramp, which now occupies Parcel No. 20, enables northbound traffic along Saw Mill River Parkway to have immediate access to the overhead bridge without the necessity of turning westerly and crossing parkway traffic and permits traffic on the relocated Ashford Avenue access to the parkway northward without crossing parkway traffic. In pursuance of the plan it became necessary to remove the railroad's passenger station and to relocate it elsewhere.

Whether or not the railroad is to be paid for its appropriated land is here for determination. Claimant maintains that, though the ramp was erected as an integral part of the elimination plan, it serves a highway purpose and not a railroad use; that it carries highway traffic only; that the railroad has lost the use and enjoyment of its land for which, in these circumstances, it may compel compensation.

It is established that railroad corporations may be required, at their own expense, not only to abolish existing grade crossings but also to build and maintain suitable bridges or viaducts to carry highways, newly laid out, over their tracks, or to carry their tracks over such highways (*Chi., Mil. & St. P. Ry.* v.

*Minneapolis,* 232 U. S. 430; *Erie R. R. Co.* v. *Public Util. Commrs.,* 254 U. S. 394). But no such burden has been imposed upon them by our Legislature, recognizing as it did that elimination of grade crossings is an advantage to the people of the State as well as a benefit to the railroad companies (*People ex rel. Simon* v. *Bradley,* 207 N. Y. 592; *Matter of State Comm. of Highways* [*Town of Ripley*], 239 N. Y. 279). The Grade Crossing Elimination Acts (L. 1928, ch. 678; L. 1939, ch. 289) make provision for a definite allocation and sharing of the elimination expenses by the railroad, State and county, in stated proportions. Such enactments contain no direction requiring the railroad to surrender its lands without reimbursement. However, it has been held that where the project requires the use of the land for a railroad purpose, no recompense is due the railroad. The holdings in *Syracuse Grade Crossing Comm.* v. *Delaware L. & W. R. R. Co.* (197 Misc. 192, mod. on other grounds, 263 App. Div. 930, affd. 290 N. Y. 632) and *Long Is. R. R. Co.* v. *State of New York* (199 Misc. 1063) are in consonance with this principle. In those cases the railroads were required to convert their lands from noncarrier to carrier purposes and, thus, the lands affected continued to be used for railroad purposes. As was said by Judge EDGECOMB in the *Syracuse* case (*supra,* pp. 198–199) : " This is not the case of taking private property for public use without just compensation, which is contrary to the fundamental law of the land and one's sense of natural justice. The property is already dedicated to the public use, and is presumed to have been acquired for that purpose; it is owned by the same corporation which will *use it in the future.* The owner has not been deprived of its use; true it will not be able to use it in the future as it has in the past, but its past use has not been in strict accordance with the object for which its owner was incorporated and was authorized to take and hold property." (Emphasis added.) But here it cannot be said that the railroad will have the use or enjoyment of its appropriated property in the future. The ramp, which now occupies the land, serves a highway as distinguished from a railroad purpose. It serves only to facilitate movement of Saw Mill River Parkway (highway) traffic in various directions. The elimination of the danger at grade could have been accomplished by the mere construction of the overhead bridge on relocated Ashford Avenue. Highway traffic from east to west and from west to east could then have moved with equal facility. Traffic on Saw Mill River Parkway moving north and south would also have had available means of

ingress and egress to the easterly and westerly portions of relocated Ashford Avenue, though not with the same measure of convenience afforded by the ramp. Clearly then the ultimate purpose of the construction was to furnish a more convenient facility to highway traffic only.

It is also to be considered that a taking of the company's land without compensation for a purpose other than a railroad use, would operate to deprive it of the benefit of the expense-sharing provisions of the Grade Crossing Elimination Acts, since it would be required to contribute more than its statutory share of the elimination expense. (*Matter of State Comm. of Highways [Town of Ripley]*, 239 N. Y. 279, 283, *supra.*)

Upon the facts of this case, the appropriation of claimant's land without just compensation would be in contravention of subdivision (a) of section 7 of article I of the Constitution. An award is therefore made in favor of claimant in the sum of $8,955, with appropriate interest. Submit findings of fact and conclusions of law within ten days.

The court has viewed the property.