NEW YORK CENTRAL RAILROAD COMPANY, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 28761.)

Third Department, March 31, 1954.

614

*William R. Stevens, Gerald E. Dwyer* and *Arthur H. Bern-stein* for respondent.

*Nathaniel L. Goldstein, Attorney-General* (*John R. Davison* and *Wendell P. Brown* of counsel), for appellant.

IMRIE, J. The State of New York has appealed from a judgment of the Court of Claims awarding claimant, New York Central Railroad Company, damages for the taking of land in the village of Dobbs Ferry, Westchester County. The controversy arises out of the elimination of the grade crossing at Ashford Avenue and claimant's Putnam Division railroad tracks. An overhead crossing has been constructed, which carries partially relocated Ashford Avenue over the railroad tracks and the parallel Saw Mill River Parkway about one

hundred and ten feet westerly thereof. The Public Service Commission's order of February 18, 1936, as to such elimination directed that claimant's Ardsley station be moved from the easterly to the westerly side of its tracks and a ramp built connecting the parkway with the elevated structure. An amendatory order of the commission, dated October 31, 1939, also directed the construction of the ramp. The land here involved, on which the station formerly stood and which now carries the said ramp, is denominated Parcel No. 20 and lies outside the normal or reasonable limits of the railroad right of way.

The Appellate Division of the Second Department affirmed the 1936 order without opinion. (*New York Central R. R. Co. v. Public Service Comm.*, 251 App. Div. 827; motions for reargument and leave to appeal to the Court of Appeals denied, 252 App. Div. 752.) No appeal was taken from the 1939 order. The parties agree that the claim must be dismissed if the use presently being made of the ramp in any way serves a railroad purpose. Claimant's thesis is that the ramp is used solely for highway purposes and the trial appears to have proceeded on the theory that the railroad should recover in such event.

The elevated structure or overpass has been built about one hundred and forty-five feet southerly of Ashford Avenue. That avenue has been barricaded east and west of the railroad tracks to the end that the ramp connecting the northbound lane of the parkway and the overpass constitutes a substitute connection for the barricaded portion of Ashford Avenue. It was admitted for claimant on the trial that it would have been impossible from a practical engineering standpoint to carry the elevated structure over the railroad without continuing it over the parkway and that the ramp in question is an integrated part of the crossing elimination project.

Claimant advances the argument that the statute does not prohibit a railroad corporation from obtaining an award for the value of its land taken for grade crossing removal. That bare statement of fact does not suffice to sustain the view that the railroad may be compensated for such land. Implicit in the scheme for the abolition of grade crossings is the concept that property already dedicated to a public use is continuing in such use in the process of eliminating the hazards of grade crossings. Railroad corporations may be required to abolish grade crossings at their own expense. (*Chi., Mil. & St. P. Ry. v. Minneapolis*, 232 U. S. 430; *Erie R. R. Co. v. Public Util. Comrs.*, 254 U. S. 394.) Obviously, in such a case they would

not be in a position to claim compensation for the use of their lands. This State has placed no such burden upon them. Until 1939 they were required to pay 50% of the cost of such projects. By 1938 it had become apparent, in view of the serious financial condition of these carriers, that such a proportionate cost sharing was so onerous as to pose a threat to the solution of the crossing elimination program. The people of the State then amended their Constitution in such manner that a railroad's proportion of the net cost of the project should not exceed 15%. (N. Y. Const., art. VII, § 14.)

It was, and has continued to be, accepted that, when land of the railroad is necessary as an engineering proposition (*Matter of State Comm. of Highways* [*Town of Ripley*], 239 N. Y. 279, 283) or for a railroad purpose (*Syracuse Grade Crossing Comm.* v. *Delaware L. & W. R. R. Co.*, 197 Misc. 192, 199, mod. on other grounds, 263 App. Div. 930, affd. 290 N. Y. 632; *Long Is. R. R. Co.* v. *State of New York*, 199 Misc. 1063, 1065, 1066), no compensation is allowable to the railroad. "It is not claimed, nor can it well be asserted, that the railroad company is entitled to be compensated for that portion of its present right of way which will be used in the elevation of its tracks. I can see no difference in principle in the use of such lands and the parcels [lands used for noncarrier purposes] in question." (*Syracuse Grade Crossing Comm.* v. *Delaware L. & W. R. R. Co.*, *supra*, p. 199.)

At the trial and here the State has claimed that the present issue was determined by the decision of the Appellate Division of the Second Department of the Supreme Court to which we have already referred.

In opposition, claimant advances various theories. It states that its appeal stressed two points, (1) that the commission had no jurisdiction to direct the elimination of the grade crossing after having closed the proceeding and denied a motion for rehearing and (2) that it would be arbitrary to compel the railroad to share the cost of the elimination project and, in addition, the cost of separating the grades of Ashford Avenue and the parkway, "which is undeniably a highway improvement." As the commission's order was affirmed without opinion, claimant asserts it cannot be said that the affirmance was on either or both of such points. Later in its argument, however, claimant replies to the State's argument that it was bound by the 1939 order since no appeal was taken therefrom, with the comment that the status of the "highway ramp" had already been deter-

mined by the Appellate Division's affirmance of the original order as " *an integral and necessary part of the project* " and that the cost was chargeable to the elimination account to be borne by the parties to the proceeding in accordance with the proportions fixed by the Grade Crossing Elimination Act (L. 1928, ch. 678, as amd.; L. 1939, ch. 289). (Emphasis supplied.) On the trial claimant conceded that its position before the Appellate Division was that it objected to the requirement that it pay a part of the cost of the approach ramp on the ground that such ramp constituted solely a highway use. Thus there appears to be little material difference in the views of the parties concerning the question submitted in the court for determination. The decision is instinct with the finding that the ramp is an integral part of the grade crossing elimination project and that this claimant should pay its proportion of the cost thereof as a part of the whole.

It was within the province of the Public Service Commission to determine what was appropriate and suitable in the accomplishment of the end it sought to attain. Obviously, it believed that it was necessary to provide for the ramp to the overpass, which would require the moving of the station from and the placing of the ramp on Parcel No. 20. The law provided for a court review of such an order at the instance of a party aggrieved. This claimant sought such a review. The result of the appeal can be considered in no other way than as a final approval of the elimination plan, particularly as to the ramp in question and the purpose served by it. There is no authority for a collateral review of the commission's order by the Court of Claims.

Even were that possible, we discover no justification for a finding that the ramp and the parcel upon which it is placed serve a highway purpose only. It is not a fringe proposition. It is at the core of an integrated plan to remove pre-existing hazards of travel. As was found by the court below, it is a substitute connection for barricaded Ashford Avenue as the latter crossed the railroad tracks at grade.

Once it is found that the construction of the ramp was an essential part of the grade crossing elimination project, it necessarily follows that the land of the railroad occupied by the ramp is still being used for a railroad purpose and no compensation is payable to it therefor.

It is proper to note the contention of the State that Parcel No. 20 is, in part, and aside from the question of the character

of the ramp, used for a railroad purpose, in that supports for the overpass are on that parcel. An examination of the photograph marked as claimant's exhibit 8 and the plan marked as State's exhibit C appears to demonstrate such use.

The judgment should be reversed on the law and the facts and the claim dismissed, with costs. The following findings of claimant's requests to find should be reversed: Finding No. 12 and Conclusions of Law Nos. 5 to 13, inclusive. As to appellant State, the requests to find Nos. 10, 17, 18, 19, 24 and 25 and Conclusions Nos. 1 to 7, inclusive, should be found. Settle order on notice.

Foster, P. J., Bergan, Coon and Halpern, JJ., concur.

Judgment reversed, on the law and facts, and the claim dismissed, with costs. The following findings of claimant's requests to find are reversed: Finding No. 12, and Conclusions of Law Nos. 5 to 13, inclusive. As to appellant State, the requests to find Nos. 10, 17, 18, 19, 24 and 25, and Conclusions Nos. 1 to 7, inclusive, are found. Settle order on notice.