16267

PROSSER *ET AL.* v. SEABOARD AIR LINE R. CO.
(56 S. E. (2d) 591)

34

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *and Dargan, Paulling & James,* of Darlington, *for Appellant,*

*Messrs. McEachin & Townsend,* of Florence, *for Respondents,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *and Dargan, Paulling & James,* of Darlington, *for Appellant,*

October 11, 1949.

TAYLOR, Justice.

This appeal comes to this Court from an order of the Honorable L. D. Lide, who heard this matter by way of appeal from an order of the Florence County Governing Board dated May 1948, relating to the establishment of a crossing over the Seaboard Air Line Railroad right-of-way in the Town of Johnsonville in Florence County, South Carolina, connecting the east and west portions of Marion Street in said town.

On or about the 6th day of November 1947, the Town Council of the Town of Johnsonville filed with the Florence County Governing Board their verified petition for an order requiring the Seaboard Air Line Railroad Company to establish the crossing aforementioned. In due course the Railroad Company filed its answer and return alleging, among other things, that the crossing is unwarranted and not required by public convenience and necessity, but rather that it is contrary to such public interest and would be arbitrary and confiscatory and asks that the petition be denied.

This matter came on for hearing before the Governing Board on March 5, 1948, at which time only four of the seven commissioners were present. Counsel for the Railroad Company interposed their objection to proceeding in the absence of the full membership. This objection was overruled by the Board, stating that the testimony would be taken and the decision in the matter reserved until the next meeting of the Board, when the full Commission would review

such testimony. The Commission thereafter filed its order, dated May 1948, signed by the Chairman and the remaining six members of the Board, finding "that the convenience and necessity of the citizens of the Town of Johnsonville require" the crossing in question, and ordered the same constructed pursuant to Section 8434 of the 1942 Code of Laws for South Carolina.

Appeal was duly taken to the Court of Common Pleas for Florence County and heard by the Honorable L. D. Lide, who, at the request of Counsel, visited the "locus in quo", and after hearing all parties concerned, filed his order, dated July 27, 1948, dismissing all exceptions.

The appellant Railroad Company now appeals to this Court contending that public convenience and necessity was not shown by the evidence. In considering this question, this Court is bound by the findings of fact as determined by the Governing Board of Florence County and approved by the Circuit Judge, if there is evidence sufficient upon which to base such findings. *Green v. County Commissioners,* 27 S. C. 9, 2 S. E. 618; *Tinsley v. Union County,* 40 S. C. 276, 18 S. E. 794; *Stacy v. Machine Works,* 70 S. C. 178, 49 S. E. 223; *James v. Northwestern Railroad Co.,* 70 S. C. 554, 50 S. E. 504; *Jenkins v. Southern Railway,* 73 S. C. 292, 53 S. E. 481; *Wilson & James v. A. C. L. Railroad Company,* 79 S. C. 198, 60 S. E. 663; *A. & E. Leather Goods Company v. Sentz,* 87 S. C. 267, 69 S. E. 390; *Dingle v. Northwestern Railroad Company,* 112 S. C. 390, 99 S. E. 828; *Ward v. Atlantic Coast Line Railroad Company,* 155 S. C. 54, 151 S. E. 904; *Thomas v. Atlantic Coast Line Railroad Company,* 168 S. C. 185, 167 S. E. 239.

There is evidence to the effect that Johnsonville had a population of approximately four hundred persons in 1940 and that this has increased until at the present time the population is between six and seven hundred persons. The town consists of three principal streets, Broadway being the main

street, with Pine running parallel to the east and Marion similarly on the west side. Suitable crossings are in existence on both Broadway and Pine, and it is Marion that the town now seeks to have constructed thereon the crossing in question.

Appellant's line involved is the main north and south freight line running from Savannah, Georgia, to Hamlet, North Carolina, by way of Charleston, South Carolina, forming a part of appellant's route from eastern points to Florida. The traffic on Marion Street, although no suitable crossing has been constructed, is now using a footpath and estimated to be five or six times as much as that on Pine Street. School children use this route going to and from the school, which is located on this street and has approximately five hundred twenty-five pupils with seventeen teachers. Merchants with places of business located on this street testified that at the present time it is necessary that they proceed to Broadway where they cross the tracks, then back down alongside the tracks to the depot located at the junction of the railroad and Marion Street, and that freight being hauled from the depot to the places of business is carried along this route.

Upon appeal from the findings of the Governing Board of Florence County to the Circuit Court, the Hearing Judge was requested by both parties to inspect the *"locus in quo"*. After doing so and reviewing the evidence, his Honor issued his order dated July 27, 1948, affirming the findings of the Governing Board of Florence County.

Appellant takes the position that the proposed crossing would be so dangerous and hazardous in character as to constitute a menace to the lives of those using the crossing, and that public safety must be considered paramount to that of convenience and necessity. Motorists traveling from the west would have their view of trains approaching from the south obscured by the depot until they had reached a point where the house track is now located, and if cars were "spotted" thereon, this would tend to further obscure such

vision as one would ordinarily have and that persons approaching from the west would have their view obscured as to trains approaching from the north if any cars were "spotted" on the house track north of the crossing.

All railroad crossings are attended with some degree of danger. However, a study of the record of this case reveals that this crossing is very similar to a great many crossings in such towns in this section of the country. The principal obstructions involved in this crossing are the depot, the warehouse and such cars as appellant would "spot" on the house track, none of which arise from conditions beyond the control of appellant and these could be corrected without undue difficulties. Appellant relies upon the case of *Town Board of Town of Royalton v. New York Central & H. R. R. Co.,* 138 App. Div. 412, 122 N. Y. S. 844, 846, to sustain its position. In that case the Court sustained the Public Service Commission in holding that the crossing should be above the railroad grade rather than a grade crossing as the latter would be extremely dangerous "owing to obstructions of the view which travelers approaching it in either direction would have." This case further holds that public safety is paramount to that of public convenience and necessity, and with this we find no fault. However, we are of the opinion that this case is not authority for contentions of appellant in the case at bar.

There is an abundance of evidence to support the findings of fact as determined by the Governing Board of Florence County, concurred in by the Circuit Judge, as to convenience and necessity for the construction of the crossing, and there is further evidence to the effect that a properly constructed crossing may be accomplished without too much difficulty and expense and that such a crossing would be safer than it is in its present condition for the many school children and other pedestrians who now pass that way.

It is also contended that establishment of the crossing in question would unlawfully deprive appellant of its property

without compensation and without due process in violation of Article I, Section 17 of the Constitution of South Carolina and the Fourteenth Amendment of the Constitution of the United States. This Court has not heretofore had occasion to pass directly upon this question. Appellants contend and cite authorities for their position that a city has a right to open a street when the public interest demands it and has the right to close a dangerous street when the public interest demands, but it can do neither without paying for the property taken, destroyed or seriously damaged. None of these authorities, however, are in point if such crossing may be established under police powers.

This Court in the case of *Thomas v. Atlantic Coast Line Railroad Company*, 168 S. C. 185, 167 S. E. 239, sustained an order of the Board of County Commissioners for Williamsburg County establishing a crossing within the limits of the Town of Kingstree over the right-of-way of the Railroad Company. The proceedings in that case were the same as in instant case, being brought under Section 8434 of the South Carolina Code, 1942, and the case is very much in point except that the Railroad Company on appeal to the Supreme Court did not raise the question that the taking was in violation of Article I, Section 17 of the Constitution of South Carolina and the Fourteenth Amendment of the Constitution of the United States. The *Thomas case* is further differentiated from the case at bar in that there the street was in existence prior to the construction of the railroad, while here the railroad was in existence prior to the opening of the street or town way.

A review of the many cases on this point reveals that the great weight of authority is to the effect that a state has power under its police powers to require a railroad company to construct and maintain at its own expense suitable crossings over the right-of-way of railroad companies even though the street be laid out subsequent to the construction of the railroad, the reasoning being that a

railroad company receives its charter and franchise subject to the implied right of the state to establish and open such streets and highways over and across its right-of-way as public convenience and necessity require.

In 44 Am. Jur. 297, we find the following:

"The authorities are not fully agreed upon the question whether the state or a municipality may, in the exercise of the police power, compel a railroad company, without compensation, to construct and maintain suitable crossings at highways or streets extended over the right-of-way subsequent to the construction of the railroad. Some courts deny the existence of this power, as amounting to a taking of property without just compensation, but the great weight of authority sustains the validity of such regulation and requirements, whether the crossing is at grade or below or above the tracks."

Very much in point is the following as found in 22 R. C. L. 786-787:

"A railroad company, it is held, receives its charter and franchise subject to the implied right of the state to establish and open such streets and highways over and across its right-of-way as public convenience and necessity may from time to time require. That right on the part of the state attaches, by implication of law, to the franchise of the railroad company, and imposes upon it an obligation to construct and maintain at its own expense suitable crossings at new streets and highways to the same extent as required by the rules of the common law at streets and highways in existence when the railroad was constructed."

In *Chicago, B. & Q. R. Co. v. City of Chicago,* 166 U. S. 226, 590, 17 S. Ct. 581, 41 L. Ed. 979, Mr. Justice Harlan, writing the opinion of the Court, states:

"The company laid its tracks subject to the condition, necessarily implied, that their use could be so regulated by competent authority as to insure the public safety. And as

all property, whether owned by private persons or by corporations, is held subject to the authority of the state to regulate its use in such manner as not to unnecessarily endanger the lives and the personal safety of the people, it is not a condition of the exercise of that authority that the state shall indemnify the owners of property for the damage or injury resulting from its exercise. Property thus damaged or injured is not, within the meaning of the Constitution, taken for public use, nor is the owner deprived of it without due process of law. The requirement that compensation is made for private property taken for public use imposes no restriction upon the inherent power of the state by reasonable regulations to protect the lives and secure the safety of the people."

It appears to be well settled that railroad companies may be required at their own expense not only to establish crossings, but to abolish grade crossings, to build and maintain suitable bridges or viaducts to carry highways newly laid out over their tracks or to carry their tracks over such highways. *State ex rel. City of Minneapolis v. St. P., Minn. & Man. Ry. Co.,* 98 Minn. 380, 108 N. W. 261, 28 L. R. A., N. S., 298, 120 Am. St. Rep. 581, 8 Ann. Cas. 1047; *Chicago, M. & St. P. Ry. v. City of Minneapolis,* 232 U. S. 430, 34 S. Ct. 400, 58 L. Ed. 671; *New York & N. E. R. Co. v. Town of Bristol,* 151 U. S. 556, 567, 14 S. Ct. 437, 38 L. Ed. 269; *Chicago, B. & Q. R. Co. v. City of Chicago,* 166 U. S. 226, 252, 255, 17 S. Ct. 581, 41 L. Ed. 979; *Chicago, B. & Q. R. Co. v. State of Nebraska,* 170 U. S. 57, 18 S. Ct. 513, 42 L. Ed. 948; *Northern Pacific Ry. Co. v. State of Minnesota ex rel. City of Duluth,* 208 U. S. 583, 597, 28 S. Ct. 341, 52 L. Ed. 630; *St. Paul, Minn. & Man. Ry. Co. v. State of Minnesota,* 214 U. S. 497, 29 S. Ct. 698, 53 L. Ed. 1060; *Cincinnati, I. & W. Ry. Co. v. City of Connersville,* 218 U. S. 336, 343, 344, 31 S. Ct. 93, 54 L. Ed. 1060, 20 Ann. Cas. 1206. See also *Detroit, Ft. W. & B. I. Railway v. Osborn,* 189 U. S. 383, 23 S. Ct. 540, 47 L. Ed. 860; *New Orleans Gas-Light Co. v.*

*Drainage Comm.,* 197 U. S. 453, 462, 25 S. Ct. 471, 49 L. Ed. 831; *Chicago, B. & Q. Ry. Co. v. State of Illinois ex rel. Drainage Com'rs,* 200 U. S. 561, 592, 593, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; *Cleveland v. City Council of Augusta,* 102 Ga. 233, 29 S. E. 584, 43 L. R. A. 638; *Dobbins v. Seaboard Air Line R. Co.,* 108 S. C. 254, 93 S. E. 932. See also Section 8474-8, S. C. Code, 1942; 109 A. L. R. 774, 44 Am. Jur. 519, Section 297, Note 14; *Collum v. Southern Ry. Co.,* 189 S. C. 336, 1 S. E. (2d) 234, and cases cited therein. This Court is therefore of the opinion that this exception should be resolved against the contention of appellant.

Appellant urges that Sections 7367 and 7368 of the ■ South Carolina Code for 1942 must be considered in conjunction with Section 8434 of the same code. For the reasons heretofore expressed and the decision of this Court in *Thomas v. Atlantic Coast Line R. Co.,* 168 S. C. 185, 157 S. E. 239, we are unable to agree with this contention and this question must be resolved against the appellant.

Under exceptions 10 and 11 to the order of the ■ Governing Board, appellant contends:

"(10) The Florence County Governing Board erred in hearing this matter, over the protest of the respondent, in that there were only four members of the seven member board present, the three members having absented themselves from the hearing, without substantial reason therefor, after they had attended the meeting of the Board that same day while other business was transacted.

"(11) That the three members of the Governing Board who were absent from the hearing did not, and could not, have read the testimony which was taken at the hearing before they joined in the decision with the other Board members who were present, because the transcript of testimony was made available to the Board members early on the morning of April 30, 1948, and the Board reached a

unanimous decision in regard to the matter about noon of the same day, and the decision of the three absent members of the Board was arbitrary and not based upon the testimony in the case."

The Florence County Governing Board consists of seven members and the law relating thereto is to be found in Section 4351 of the 1942 Code for South Carolina. It is undisputed that a quorum was at all times present during the hearing, that three members were absent from the hearing but joined in signing the order. The question before the Board was whether or not the public convenience and necessity required the crossing and this could be determined by a majority of the Board acting for that body as effectively as though the entire membership were present. The fact that the three absent members joined in signing the order in no way affected its validity. *Gaskin v. Jones,* 198 S. C. 508, 18 S. E. (2d) 454, 15 C. J. 461-468, 20 C. J. S., Counties, § 88, pp. 858-859.

For the foregoing reasons this Court is of the opinion that all exceptions should be dismissed and the judgment of the Circuit Court affirmed.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.