69 So.2d 43 (1953)
224 La. 279
ILLINOIS CENTRAL R. CO.
v.
LOUISIANA PUBLIC SERVICE COMMISSION et al.
No. 41054.
Supreme Court of Louisiana.
November 9, 1953.
Rehearing Denied December 14, 1953.
*44 Fred S. LeBlanc, Atty. Gen., Joel B. Dickinson, Asst. Atty. Gen., for defendant-appellant.
Breazeale, Sachse & Wilson, Baton Rouge, for plaintiff-appellee.
McCALEB, Justice.
Upon the request of the Village of Harahan and the Police Jury of Jefferson Parish, the Public Service Commission cited the Illinois Central Railroad to show cause why it should not be required to install, construct and maintain a highway over its tracks near Harahan to serve a proposed street or road to be built connecting the Airline and Jefferson Highways. Thereafter, a hearing was held by the Commission at which evidence was introduced respecting the public necessity for the construction of the new road. The Illinois Central Railroad, in resisting the demand, contended that the Commission was without jurisdiction because its right of way would have to be expropriated in a judicial proceeding and that, in any event, the point at which the road would cross its tracks would be so near its main yard that it would provide a constant danger and hazard to the public and would also hamper its own operations.
These objections were overruled and, on January 18th 1952, the Commission entered *45 its Order No. 5924 requiring the railroad to permit the construction of the proposed road over its right of way.
On April 14th 1952, the railroad filed the instant suit to enjoin the Commission from enforcing its order, alleging that its action was illegal as it constituted a taking of its property without just compensation and further that the order was issued arbitrarily, without regard to the facts and without sufficient evidence to support it.
Following a hearing in the case, the trial judge, being of the opinion that the Public Service Commission was without jurisdiction to render the assailed order, granted a permanent injunction restraining its execution. Wherefore this appeal.
The Commission asserts that its authority to issue the order is derived from Section 4 of Article 6 of the Constitution of 1921 vesting it with plenary power to supervise, regulate and control all common carrier railroads and other public utilities and also by a special mandate of the Legislature in Act 132 of 1918, which has been incorporated as part of the Revised Statutes of 1950. Section 1 of the Act, which is now LSA-R.S. 45:841, declares:
"The Louisiana Public Service Commission shall require the owner, possessor or operator of any railway, railroad * * * crossing any public road already constructed or which may be constructed, to construct and maintain a suitable and convenient crossing over such public road, the crossing to extend to the limits of the right of way, or fifty feet from the center of such railway, railroad * * * in accordance with the standard specifications furnished by the department of highways in respect to such crossings."
The trial judge entertained the notion that the foregoing provision pertains to public roads which had been constructed prior to the passage of the act and to those which have actually been constructed thereafter but that it was not applicable to a proposed street or road, as presented in this instancei. e., to one which had not been constructed at the time application was made to the Commission for the order.
We cannot subscribe to this view. The language of the statute is explicit. By its plain terms, it imposes on the Commission the duty of requiring railroads to construct and maintain suitable crossings over all public roads which are to be constructed as well as to all others. See Gulf, C. & S. F. Ry. Co. v. Louisiana Public Service Commission, 151 La. 635, 92 So. 143. To hold otherwise would be to say that the governing authorities engaged in the planning and construction of public roads would first be obligated to build the new road or street up to the railroad right of way in order to vest the Public Service Commission with authority to order the railroad to provide the crossing over its tracks.
Counsel for the railroad, in their argument and brief, do not attempt to uphold the interpretation given to the statute by the trial judge. They take the position that the Public Service Commission was without jurisdiction in the premises because the proposed crossing over the railroad right of way involved the expropriation of its property, a matter over which that body was without any authority whatsoever. The particular claim of counsel is that, since the railroad has a fee simple title to the right of way,[1] no part of it may be used as a public crossing without expropriation proceedings in view of the prohibition contained in Section 2 of Article 1 of the Constitution declaring that "private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." In support of this contention, they rely on the case of Louisiana *46 Ry. & Nav. Co. v. Louisiana Public Service Commission, 165 La. 219, 115 So. 465.
Although counsel do not directly challenge the constitutionality of LSA-R.S. 45:841, the question of its validity is inescapable as the proposition advanced by them cannot be answered without determining whether the Act violates Section 2 of Article 1 of the Constitution in that it operates as a taking of part of the railroad right of way for a public purpose without payment of compensation. This is necessarily so because it is clear that the statute neither provides for nor envisions an expropriation of the railroad right of way by the governing authorities charged with the construction of the new work.
We do not think that the position of the railroad is well founded. The fact that the company holds an unencumbered paper title to the land which it uses as its right of way does not warrant the conclusion that it has a perfect ownership as defined by Article 490 of the LSA-Civil Code. On the contrary, by the very nature of the business in which it engages, the right of way is impressed with a public interest and is declared to be a public highway by Section 3 of Article 13 of our Constitution. Therefore, LSA-R.S. 45:841 is not violative of Section 2 of Article 1 of the Constitution as the prohibition contained therein forbids only the taking of private property for public purposes without adequate compensation. Implicit in the charter and franchise of the railroad company is the implied condition that it is granted subject to the right of the State, in the exercise of its police power, to establish and authorize new works necessary and subservient to the convenience and safety of its citizens which might cause damage to the property of the railroad. To this end, the State has the power to require of the railroad the uncompensated duty of constructing and maintaining all such crossings over its right of way as are reasonable and necessary for the public.[2]
The question posed respecting the validity of LSA-R.S. 45:841 is not novel. Laws of this sort have been upheld by the great weight of authority throughout this country and by the Supreme Court of the United States. See 44 Am.Jur. § 297, page 519; 74 C.J.S., Railroads, § 156d; the comparatively recent decision (1949) of the Supreme Court of South Carolina in Prosser v. Seaboard Air Line R. Co., 216 S.C. 33, 56 S.E.2d 591 and the many authorities there cited and discussed and Chicago, Mil. & St. P. Ry. Co. v. Minneapolis, 232 U.S. 430, 34 S.Ct. 400, 58 L.Ed. 671.[3]
The case of Louisiana Ry. & Nav. Co. v. Louisiana Public Service Commission, cited by counsel, in no way conflicts with the foregoing views and pronouncements. In that matter, the Public Service Commission, at the instance of the Police Jury for the Parish of East Baton Rouge, ordered the railway company to construct a public road over a 50 foot strip of land owned by it which ran adjacent to its right of way. The company refused to obey this order and brought an injunction proceeding to restrain its enforcement, contending that its private property could not be dedicated to a public use without expropriation in proper proceedings. This stand was upheld by the lower court and the judgment was affirmed *47 on appeal. But our ruling went no further than to hold that the railroad could not be forced to construct a public road over the 50 foot strip (which had neither been dedicated nor expropriated) adjoining its right of way. Albeit, the court expressly refrained from considering the issue in this case as it stated that the trial court had correctly found "that it was unnecessary for it to pass upon the right of the Public Service Commission to force the railway company to construct a crossing over its right of way;".
On the merits, counsel for the railroad argue that the order of the Commission was arbitrary and, therefore, illegal because the record shows that the proposed crossing is so near to "Mays Yard", the principal marshalling area for its whole railroad system, that it would cause great congestion and danger in its operations, thus impeding the orderly pursuit of its business. In addition, it is said that to locate the crossing as contemplated will increase the hazards encountered by the public in their use of the proposed link between the Jefferson and Airline Highways and it is suggested that a detour in the new road to another crossing (already established to the north of the proposed one) would suffice.
It appears from the record that evidence was taken contradictorily before the Public Service Commission with respect to the objections raised by the railroad and the Commission concluded that the proposed crossing would not be any more hazardous than the present crossing to the south at Central Avenue and that the Village of Harahan, due to its increased population (approximately 5000 inhabitants), is entitled to have direct access to the Airline Highway.
After a review of the record, we cannot say that the decision of the Commission was plainly contrary to the facts or unsupported by evidence.[4] Therefore, since the ruling was not arbitrary or capricious it will not be disturbed as it is well settled that the orders of the Public Service Commission, like those of other administrative bodies acting under a delegation of discretionary authority, should be accorded great weight and will not be overturned by the courts in the absence of a clear showing of abuse of power. Burke v. Louisiana Public Service Commission, 215 La. 451, 40 So.2d 916; Gulf States Utilities Co. v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250.
The judgment appealed from is reversed and the suit is dismissed at plaintiff's costs.
MOISE, Justice (dissenting).
The City of Harahan, the Police Jury of Jefferson Parish and the Louisiana Highway Department sought to obtain a right of way over the lands of the Illinois Central Railroad. They desired to impose a servitude of way without the payment of compensation. The Illinois Central Railroad resisted such demand on the ground that neither the City of Harahan nor the Police Jury of Jefferson Parish invoked the due process of law clause of the Louisiana Constitution of 1921 for the obtaining of a dedication of a street over and across its tracks, and that the Louisiana Highway Department, which has the power of expropriation, did not seek to expropriate the land and pay compensation for its taking. These bodies wanted the land without the payment of a price, and such action was in direct conflict with Article 1, sec. 2, of the Louisiana Constitution of 1921 which reads:

*48 "No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."
The three above named government instrumentalities involked the aid of the Louisiana Public Service Commission, and that commission confirmed a taking without due process of law and without compensation previously made by issuing the following order:
"Required to permit the construction of the railroad crossing, involved herein, and that the respondent immediately enter into negotiations with the Louisiana Department of Highways, the Village of Harahan and the Police Jury of Jefferson Parish and/or any other public body concerned, and thereafter join in the agreements and procedures necessary to effectuate the construction and maintenance of the crossing herein before discussed, * * *."
Thereupon, the railroad company appealed to the courts to enforce and to maintain and to support the provisions of the Constitution. The Nineteenth Judicial District Court for the Parish of East Baton Rouge issued its temporary restraining order against the enforcement of the ruling of the Louisiana Public Service Commission, and upon hearing, that court issued a permanent injunction. The Louisiana Public Service Commission prosecuted an appeal to this Court, and after a hearing, the majority reversed the judgment of the district court.
I am, therefore, in this dissent not attacking commissions nor officials but a lack of due process of law on their partnot motives but reasons, not judges, but decisions.
The majority opinion bases its ruling on Article 6, sec. 4 of the Louisiana Constitution of 1921; sec. 3 of Article 13 of the same Constitution, and LSA-R.S. 45:841.
We shall discuss briefly the law in the order named. Article 6, sec. 4 of the Louisiana Constitution of 1921 grants the Louisiana Public Service Commission certain powers which are purely regulatory of the particular carrier herein involved. The Constitution does not grant to the commission power to expropriate property, and when that body confiscates property for the alleged public purposes of the three utilities named, it is done in derogation of the rights and powers imposed on that commission.
This Court passed on the powers of the commission in the case of River & Rail Terminals, Inc., v. Louisiana Ry. & Nav. Co., 171 La. 223, 130 So. 337, 339, and stated:
"The Louisiana Public Service Commission is a public board, and not a part of the established judiciary system of the state. It is not a court, in any proper sense of that term. The power of eminent domain is not conferred upon the Commission, and it is powerless, by the adoption of any rule or regulation, to take away from the courts of this state their exclusive right to pass upon the question as to what constitutes public utility and public purpose in matters of expropriation."
The next Constitutional provision is Article 13, sec. 3, which declares:
"All railroads are hereby declared public highways, and every railroad company shall have the right, with its road, by expropriation, to intersect, connect with, or cross any other railroad, and shall receive and transport the others' passengers, tonnage and cars, loaded or empty, without delay or discrimination."
This article of the Constitution is not placed therein for the purpose of making the property of the railroad public as contradistinguished in the majority opinion from private property. The syllabus of *49 the court in the case of Kansas City, S. & G. Ry. Co. v. Louisiana W. R. Co., 116 La. 178, 40 So. 627, 5 L.R.A.,N.S., 512, states:
"All railroads are declared by the Constitution to be public highways and all railroad companies to be common carriers. This declaration applies, not only to main tracks, but also to all subsidiary tracks used for the purposes of railroad traffic."
The court itself has defined the meaning of this article of the Constitution. It is also in the nature of a benefit to the railroad in its interstate and intrastate transportation. It is for their benefit to expropriate and connect with or cross other railroads, and therefore this declaration in Article 13, sec. 3, Louisiana Constitution of 1921, in no sense relates to the property of the railroad held in perfect ownership.
The majority opinion states that the railroad property is public and not private and that the Constitutional provision applies only to private property and gives this interpretation as a reason for not obeying the Constitutional mandate.
We usually take it for granted that the Constitution commands obedience to its mandates, but under the majority opinion, it is impotent to protect.
The LSA-Revised Statute, 45:841, Act 132 of 1918, is merely a legal act and cannot supercede or displace a Constitutional mandate.
The interpretation imposed by the Court in the majority opinion of this statute would make the same unconstitutional when it is our duty to uphold the act as constitutional if possible.
The statute reads:
"The Louisiana Public Service Commission shall require the owner, possessor or operator of any railway, railroad * * * crossing any public road already constructed or which may be constructed, to construct and maintain a suitable and convenient crossing over such public road, the crossing to extend to the limits of the right of way, or fifty feet from the center of such railway, railroad * * * in accordance with the standard specifications furnished by the department of highways in respect to such crossings."
This statute should be considered together with the due process clause of the Constitution and with the rights and powers conferred in the Constitution on the Louisiana Public Service Commission, Article 6, sec. 4, Louisiana Constitution of 1921.
The railroad company makes the issue that neither the City of Harahan nor the Jefferson Police Jury sought to dedicate the property. The majority opinion argues thus:
"Although counsel do not directly challenge the constitutionality of LSA-R.S. 45:841, the question of its validity is inescapable as the proposition advanced by them cannot be answered without determining whether the Act violates Section 2 of Article 1 of the Constitution in that it operates as a taking of part of the railroad right of way for a public purpose without payment of compensation. This is necessarily so because it is clear that the statute neither provides for nor envisions an expropriation of the railroad right of way by the governing authorities charged with the construction of the new work."
The reason is faulty because the power of the Louisiana Public Service Commission is contained in the Constitution and law. Art. 6, sec. 4, La.Const. of 1921. Can a mere legislative statute which is inferior to the Constitution supercede the commandment of Article 1, sec. 2 of the Constitution of 1921?
Then the opinion goes on to say:
"We do not think that the position of the railroad is well founded. The fact that the company holds an unencumbered *50 paper title to the land which it uses as its right of way does not warrant the conclusion that it has a perfect ownership as defined by Article 490 of the LSA-Civil Code. * *"
This reasoning is a deletion of the codal provisions. You cannot acquire a servitude of way except by title, so says the LSA-Civil Code. You cannot have a perfect ownership if property is encumbered, so says Article 490 of the LSA-Civil Code. A perfect ownership has been defined in law as an unencumbered title.
The business of the railroad is that of a public carrier. The Court in the majority opinion has construed the statute to mean that the right of way over the company's land can be had without title. I believe that since that title can be obtained by dedication or by expropriation, the Louisiana Public Service Commission had no right nor power to act until the due process clause had been complied with. That is exactly what was held in the case of Louisiana Ry. & Nav. Co. v. Louisiana Public Service Commission, 165 La. 219, 115 So. 465, 466, when we said:
"The court below found, and we think correctly, that it was unnecessary for it to pass upon the right of the Public Service Commission to force the railway company to construct a crossing over its right of way; that since there had been neither a dedication nor an expropriation the said company cannot be compelled to construct a public road or street over the land owned by it in fee simple."
It does not take an immensity of common sense to see that if we are to build a house, we must lay a foundation. If we are to take private property for public purposes, the taking must be with compensation previously paid. A foundation must be laid by due process of law.
The railroad urges that the placing of a crossing at the particular point designated is not only handicapping its general business but is actually dangerous to the public for the reason that some twenty to twenty-five freight and twelve passenger trains cross at this point in a normal day, and that it had its yard in the City of New Orleans, and, because of congestion, its yards were removed to Harahan at a great expense. These contentions should be considered in determining whether the course pursued by the Louisiana Public Service Commission was arbitrary.
We are in Louisiana governed by a Constitution. Our public servants have an enterprising ambition to extend power. It is because of that reason that our Constitution sets forth specific bounds to limit official powers to be exercised and puts defenses around the person, firm, or corporation with respect to their property. The Constitution has likewise established a judicial department of government to see that those limitations imposed by it are not transgressed. The protection sought here is commanded by the organic law and is to be found in Article 1, sec. 2, Louisiana Constitution of 1921: "Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." (Italics ours.) See entire article for third exception.
The majority opinion makes a fourth exception to the three found in the above provision. By decision, the majority opinion makes the article a formula of words affording no real protection.
For the reasons assigned, I respectfully dissent.
NOTES
[1] The Public Service Commission disputes the railroad's claim, maintaining that it owns merely a servitude on the land over which its tracks are laid. Because of the conclusion we have reached, it is unnecessary that we consider this contention and we assume, for purposes of this decision, that the railroad has a paper title giving it full and perfect ownership.
[2] For an interesting dissertation on this subject see opinion of the Attorney General to the Railroad Commission of Louisiana dated September 13th 1913, reported in "Opinions of Attorney General, 1914-1916."
[3] In the last cited case, the Supreme Court of the United States, after stating that it is well settled that railroad corporations may be required at their own expense to build and maintain suitable bridges or viaducts to carry newly laid out highways over their tracks, points out that such right on the part of the State attaches by implication of law to the franchise of the railroad company, imposing upon it an obligation to construct such suitable crossings at new streets and highways to the same extent as it was required to do with respect to streets and highways in existence when the railroad was constructed.
[4] Indeed, in its brief to this court, the railroad recognizes that there is an increasing need of the Harahan community for access from the Jefferson to the Airline Highway due to the tremendous growth and development in that section. This being so, it would appear that the company's resistance is entirely without justification as its sole objection is that the crossing will interfere with its switching operations. But, if this be true, it would not be a reason for denying the public the right of direct access to the Airline Highway. Perhaps it would afford the Commission good grounds for ordering the railroad to build an overpass at its own expense above its tracks, rather than merely permitting the governing authorities to construct a crossing over the right of way.