290 So.2d 816 (1974)
SOUTHERN PACIFIC TRANSPORTATION COMPANY
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 53838.
Supreme Court of Louisiana.
February 18, 1974.
Rehearing Denied March 22, 1974.
*817 Harry McCall, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for plaintiff-appellant.
Marshall B. Brinkley, Baton Rouge, Robert M. McHale, Lake Charles, Fred G. Benton, Sr., Benton, Benton & Benton, Baton Rouge, for defendants-appellees-intervenors.
DIXON, Justice.
This is an appeal from the Nineteenth Judicial District Court, which affirmed an order of the Louisiana Public Service Commission requiring Southern Pacific Transportation Company to pay half the cost of an overpass over railroad tracks in the City of Lake Charles.
The statutory basis for the order is R.S. 33:3701:
"Where the tracks of a railroad cross a street or alley of a municipality, the municipal authorities, in order to protect the public safety, may require the railroad to pay one-half of the cost of constructing and maintaining a viaduct over their tracks, or of constructing and maintaining a subway under their tracks, the other one-half of the cost of the construction and maintenance to be borne by the municipality. The cost of the construction shall include all expenses incident thereto."
In Lake Charles plaintiff's railroad tracks run along Railroad Avenue in an *818 east-west direction, dividing the city; a "wall of steel" was the hyperbole used by the witnesses to describe the effect of the tracks. North of the tracks is a residential area of town where 28% (18,000) of the population of the City of Lake Charles reside. The proposed viaduct is on a street named Enterprise Boulevard. Pursuant to a well developed program of the city planners, Enterprise Boulevard south of Railroad Avenue is a four lane street with a boulevard dividing the lanes of traffic. Plans are to complete the four-laning of Enterprise Boulevard north of Railroad Avenue, and connect it with Opelousas Street, which runs east and west about four blocks north of Railroad Avenue. The central fire station for the city is located on Enterprise Boulevard south of Railroad Avenue, and the plans are to construct a new police station on Enterprise Boulevard.
The plaintiff resists the orders of the Louisiana Public Service Commission in three respects: (1) there is no showing of a need "to protect the public safety;" (2) the scale and magnitude and the location of the proposed overpass are arbitrary and unreasonable; (3) the allocation of 50% of the cost of the overpass was arbitrary and unreasonable and resulted in the taking of the railroad's property without due process and in deprivation of equal protection of the laws.
With these contentions we cannot agree, and affirm the judgment of the district court.

Public Safety
Plaintiff contends that the phrase in R. S. 33:3701, "in order to protect the public safety," should be confined to safety at the crossing. In the alternative, the plaintiff argues that the evidence does not show that this crossing is a hazard to public safety.
Plaintiff relies on testimony from a railroad employee that he was aware of only three collisions between automobiles and trains at this intersection in the last ten years. Further, the record shows that the crossing is protected by flashing lights and a gate which drops over one half of the roadway on either side of the track when a train approaches. Plaintiff argues that this is a safe crossing, not a dangerous crossing, and that the railroad has done what was necessary "in order to protect the public safety."
Nevertheless, the plaintiff makes admissions of matters of which the court could probably take judicial notice; that is, railroad crossings are inherently dangerous and that the only way to eliminate hazards appertaining to railroad crossings is to separate the tracks from the streets. Regardless of the number of collisions between automobiles and railroad trains which have occurred in the last ten years at this intersection, no one, not even the railroad, can say that the intersection is not fraught with certain dangers. There are only two other overpasses over this railroad in the City of Lake Charles east of Enterprise Boulevard. One is a portion of Interstate 10; the other is on State Highway 171, further to the east. One of the railroad's witnesses testified that there are about three trains a day going through Lake Charles about one hundred fifty or one hundred sixty cars in length; that about three trains a day go through Lake Charles with between one hundred and one hundred twenty-five cars; that the trains move through the city at about twenty miles an hour and the longer trains take about five to eight minutes to clear the crossing, if they don't stop. There are about eight trains a day each way with some ten to forty cars. In all, the railroad's evidence was that there are between thirty and fifty trains and yard movements going through this crossing each day. In addition, the Missouri Pacific also had about two yard movements of twenty-five or thirty cars each day over these tracks.
Enough vehicular traffic crosses the railroad tracks on Enterprise Boulevard *819 to justify the conclusion of the city planners that a four lane viaduct is essential, particularly in view of the expansion of the city and the development of traffic arteries in Lake Charles.
When the crossing is blocked by a train movement, traffic sometimes backs up for several blocks, impeding the access routes to Interstate 10. The record is convincing that, in spite of the fact that only three collisions between vehicles and trains occurred in the preceding ten years, traffic safety problems will be alleviated by the elimination of this grade crossing.
The record contains testimony demonstrating the difficulty, on occasion, of furnishing police protection of the portion of the city north of the railroad tracks. The movement of fire protection vehicles is complicated by the existence of the grade crossing. There is only one fire station north of the crossing and the main fire station is south of the crossing on Enterprise Boulevard. Emergency medical and health care is sometimes delayed by the crossing. School transportation is involved. Emergency maintenance of utilities is sometimes delayed. All these considerations involve public safety. We do not find that the words in R.S. 33:3701 are "dubious" or ambiguous (C.C. 16) and consider that the words of the statute should be interpreted as generally understood "in their most usual signification." C.C. 14. We cannot adopt the interpretation urged by the plaintiff, and confine the meaning of "protect the public safety" to safety at the crossing.
Safety is a state of being secure from liability to harm, injury, danger or risk. Fire, automobile accidents, sickness, undue delay of emergency public safety vehicles of all kinds, involved public safety, the duty of protecting which belongs to the government.

Arbitrary Size and Location of the Overpass
There is ample evidence, which we will not detail, in the record to support the decision of the City of Lake Charles to locate this overpass on Enterprise Boulevard. It is an essential part of the plans of the city, developed over many years, designed to handle the vehicular transportation of its citizens. Although we are not convinced that another route (for example, the Shattuck Street suggestion made by the plaintiff) would be better in any respect for the city than the proposed Enterprise Boulevard overpass, it is not necessary that the decision of the city to build its overpass at Enterprise Boulevard be the best or most desirable. Legislation and administrative decisions of municipal bodies will not be disturbed by the courts in the absence of arbitrariness, unreasonableness or capriciousness. Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400 (1968); Hi-Lo Oil Co. v. City of Crowley, 274 So.2d 757 (La.App.), writ refused, 277 So.2d 673 (La.1973). See also, Southern Pacific Transportation Co. v. Louisiana Public Service Commission, 262 La. 391, 263 So.2d 333 (1972). There is no evidence in the record to indicate that such decision of the city was arbitrary or unreasonable. The record supports the argument that the city has attempted to develop a satisfactory plan for the construction of this crossing for fourteen years.
Plaintiff contends that the overpass planned by the city is wider than necessary and longer than necessary. We conclude that the same rule must be applied to the improvement that is applied to the decision to locate the improvement at a particular place. Unless the improvement is unreasonably wide and unreasonably long, the courts will not substitute their judgment for the judgment of the appropriate legislative and administrative bodies.
There is ample evidence in the record to show that the proposed overpass should be *820 wide enough to carry four lanes of traffic. The railroad complains that the overpass is unnecessarily long. The city answers that its length is essential for two reasons. First, to minimize the grade in order to achieve the necessary clearance of the railroad tracks; second, to clear street intersections which might otherwise be blocked by the construction of the overpass.
Both reasons are well-founded. The record supports the conclusion that the grade of 5.8%, as proposed, is reasonable and that the design is effective and not excessive. The testimony of engineers on behalf of the City of Lake Charles was to the effect that an increased grade would not be recommended nor should the Jackson Street intersection be blocked.
To counter the estimate of one of the plaintiff's engineers that an underpass would be cheaper, the record will support a conclusion that, even if an underpass could be constructed for somewhat less money initially, the increased costs of drainage and maintenance of an underpass would be a valid consideration in choosing to build an overpass over the tracks.

Unreasonable Allocation of Cost
Plaintiff complains that the order of the Public Service Commission and the opinion of the district court are devoid of any finding as to the reasonableness of the allocation of the cost.
R.S. 33:3701 does not require an allocation of costs according to the benefit to the municipality on the one hand and the railroad on the other. Under that statute, a city is permitted to require the railroad to pay at least one-half the cost of constructing a viaduct. The legislature is presumed to have considered that one-half the cost of the crossing is not an unreasonable burden for the railroad to bear. This court held in 1953 in Illinois Central Railroad v. Louisiana Public Service Commission, 224 La. 279, 69 So.2d 43, a case in which the railroad had been ordered by the Public Service Commission to construct a highway crossing over its tracks under R. S. 45:841, that by virtue of the nature of a railroad and the business it is engaged in, its right of way was impressed with a public interest which permitted the State to require the railroad to construct and maintain crossings:
"We do not think that the position of the railroad is well founded. The fact that the company holds an unencumbered paper title to the land which it uses as its right of way does not warrant the conclusion that it has a perfect ownership as defined by Article 490 of the LSA-Civil Code. On the contrary, by the very nature of the business in which it engages, the right of way is impressed with a public interest and is declared to be a public highway by Section 3 of Article 13 of our Constitution. Therefore, LSA-R.S. 45:841 is not violative of Section 2 of Article 1 of the Constitution as the prohibition contained therein forbids only the taking of private property for public purposes without adequate compensation. Implicit in the charter and franchise of the railroad company is the implied condition that it is granted subject to the right of the State, in the exercise of its police power, to establish and authorize new works necessary and subservient to the convenience and safety of its citizens which might cause damage to the property of the railroad. To this end, the State has the power to require of the railroad the uncompensated duty of constructing and maintaining all such crossings over its right of way as are reasonable and necessary for the public." (69 So.2d at page 46).
Governmental action compelling railroads to spend money to improve intersections between railroads and streets or highways has been insulated from constitutional claims by the railroad in this State for many years. In City of Shreveport v. Kansas City, S. & G. Ry. Co., 167 La. 771, 120 So. 290, 293 (1929), an ordinance required *821 the railroad to remove certain piers supporting its overhead bridge when the piers interfered with vehicular traffic on the street below. This court denied that the Fourteenth Amendment prevented the action of the city, and, in addition, stated:
"No principle of constitutional law is better settled in this country than the principle that neither the Legislature nor the people themselves, much less their servants, can bargain away the public health, the public morals, or the public safety, since government is organized with a view to their preservation, and cannot divest itself of the power to provide for them."
We do not find that the 50% ceiling on the costs of an overpass or underpass is either arbitrary or confiscatory. It appears that the legislature in enacting 33:3701 chose to place a ceiling on the contribution a municipality might require for the construction of overpasses or underpasses. The record before us does not demonstrate that the burden of sharing in the construction of this overpass will damage the financial structure of the railroad.

Conclusion
The appellant railroad has argued that this court has jurisdiction on appeal of both the facts and the law in this case, and that there is no question of technical knowledge in this case "to warrant any premise in favor of the Commission's order or that it should receive great weight." Normally the orders of the Public Service Commission are accorded great weight and, although subject to review on both the law and the facts, will not be overturned unless they are shown to be arbitrary, capricious or abusive of the Commission's authority. Louisiana Power & Light Co. v. Louisiana Public Service Commission, 256 La. 656, 237 So.2d 673 (1970). That standard was applied in Illinois Central Railroad v. Louisiana Public Service Commission, supra, in a case involving a railroad crossing at Harahan where the court said at 69 So.2d 47: "Therefore, since the ruling was not arbitrary or capricious it will not be disturbed as it is well settled that the orders of the Public Service Commission . . . should be accorded great weight and will not be overturned by the courts in the absence of a clear showing of abuse of power."
In this case we do not deem it necessary to decide the final argument of the appellant. Not only does the record demonstrate that there has been no abuse of power, it demonstrates that the Public Service Commission was correct in its findings and conclusions.
The judgment of the district court is affirmed, at the cost of the appellant.
SUMMERS, J., dissents.