LOTTINGER, Judge.
This appeal arises from a “quick-taking” expropriation proceeding initiated by the Louisiana Department of Transportation and Development (“DOTD”) against the Illinois Central Gulf Railroad Company (“ICG”). The DOTD, in connection with the completion of the Scotlandville Interstate By-Pass for State Route La. I — 110 in East Baton Rouge Parish, sought to expropriate a right-of-way over a tract upon which ICG itself holds a right-of-way servitude. The right-of-way in favor of the DOTD was needed to construct an overpass over the railroad tracks of ICG. The expropriation suit was instituted when the parties could not amicably agree to the granting of a conventional right-of-way servitude.
*1137 The petition of the DOTD alleged that it was entitled to acquire a permanent servitude of right-of-way either under La.R.S. 45:841 or under La.R.S. 48:441 et seq., without the payment of compensation. Nonetheless, in attempting to comply with La. R.S. 48:441 et seq., the DOTD deposited into the registry of the court the nominal sum of $25.00 for payment to the person(s) entitled thereto. Upon the filing of the petition (along with requisite documentation) and the deposit of nominal compensation ($25.00) into the registry of the court, the trial court issued an order of expropriation for the needed right-of-way servitude, which commanded ICG to surrender possession of the tract of land upon which its tracks run.
ICG answered with a general denial and pled as an affirmative defense that the “quick-taking” expropriation by the DOTD was invalid because the deposit made was not an estimate of the full amount of ICG’s loss, as required by La.R.S. 48:441 et seq. ICG claimed it was entitled to $10,000.00 as just compensation for its loss.[1] The answer specifically denied the applicability of La. R.S. 45:841 to the controversy. ICG reconvened as well, alleging that the DOTD attempted or intended to attempt to begin construction of the overpass prior to obtaining a right-of-way servitude, and praying for injunctive relief.
Following discovery, ICG moved for a partial summary judgment on the issue of whether it was entitled to be fully compensated for its loss incurred by the expropriation. In connection with this motion, ICG prayed that the DOTD be ordered to increase its deposit to a sum estimated in good faith to be the full extent of ICG’s loss.
The DOTD moved for a partial summary judgment on the identical issue, asking the court to hold it entitled to expropriate without paying compensation to ICG. The two motions were consolidated for trial.
Following a hearing, the trial court granted a partial summary judgment in favor of ICG, and ordered plaintiff DOTD to amend its petition to comply with the provisions of La.R.S. 48:441 et seq. From this partial summary judgment, the DOTD has filed a devolutive appeal.
SPECIFICATION OF ERROR
Plaintiff-appellant DOTD argues generally that under La.R.S. 45:841 and the jurisprudence interpreting it, the trial court committed error in holding ICG was entitled to compensation for expropriation and in ordering the DOTD to increase the amount of its deposit to reflect an estimate of full compensation.
RAILROAD CROSSINGS
La.R.S. 45:841[2], enacted by Acts 1918, No. 132, § 1 gave to the Louisiana Public Service Commission the power to order the owner of railroads and other transportation-oriented concerns to construct and maintain crossings over public roads already constructed or which may be constructed.
In Illinois Central R. Co. v. Louisiana Public Service Commission, 224 La. 279, 69 *1138 So.2d 43 (1953), the Public Service Commission entered an order which, rather than commanding the railroad to construct a crossing, required the railroad to permit the construction of a proposed highway over its tracks by the governing authorities. The Supreme Court, in upholding the order of the PSC, stated in dicta that La.R.S. 45:841 was not violative of Section 2 of Article I of the Constitution of 1921, which declared that, “... private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.” The court noted that the statute did not envision the expropriation of the railroad right-of-way, but was not unconstitutional as a taking without compensation because railroads were declared to be public highways under Art. XIII, Sec. 3 of the 1921 Constitution.[3] Thus, as public property, the railroad rights-of-way could be crossed by new highways without expropriation and payment of compensation, because the constitution prohibited only the taking of private property without compensation.[4]
Illinois Central R. Co., supra, was cited by the Supreme Court in Kansas City Southern Railway Company v. Louisiana Public Service Commission, 254 La. 160, 223 So.2d 132 (1969). The Supreme Court, in overturning an order of the PSC which allowed the Highway Department and other governing authorities to construct a highway crossing over railroad facilities, reiterated in dicta that the railways were public property and that permitting such a crossing would not have been a taking of private property for which compensation was required under Art. I, § 2 of the 1921 Constitution. However, Justice Summers in partial dissent noted that the court’s language as to the constitutionality of La.R.S. 45:841 was purely dicta, since in neither Illinois Central R. Co. nor the instant case had the constitutionality of the statute been attacked. Justice Summers criticized the opinions which stated in dicta that railroad rights-of-way were not private property, noting that Art. XIII, § 3 of the 1921 Constitution, the basis for such a conclusion, declared railroads public highways simply to allow railroad companies to expropriate needed rights-of-ways. Justice Summers stated that to extend this provision to conclude that the railroad lines were not private property was a tortured reasoning which violated the fundamental principles underlying Article I, § 2 of the 1921 Constitution.[5]
Finally, in Southern Pacific Transportation Co. v. Louisiana Public Service Commission, 294 So.2d 480 (La.1974), La.R.S. 45:841 was held to have been superceded by La.R.S. 48:382,[6] enacted by Acts 1942, No. 4, *1139 Sec.' 54(c). The latter statute generally calls for the party who wishes to cross existing highways or transportation facilities to bear the expense of constructing and maintaining such crossing.
The cases of the Supreme Court which stated in dicta that the rights-of-way of a railroad are public property rather than private property rested on an interpretation of La.R.S. 45:841. Even though this statute has been superceded, the DOTD contends that the early decisions established the principle that railroad rights-of-way, held either under a servitude or by title translative of ownership of land, are public property which can be taken or damaged without the payment of compensation.
ICG points out that neither La.R.S. 45:841 nor La.R.S. 48:382 deal directly with expropriation but rather with construction and maintenance costs; that the cases interpreting La.R.S. 45:841 are inapplicable since the statute has been superceded; that Art. I, § 4 of the 1974 Constitution,[7] which succeeded Art. I, § 2 of the 1921 Constitution, states that property shall not be taken or damaged by the state except for public purposes and with just compensation paid, and does not distinguish between private and public property; and that Art. XIII, § 3 of the 1921 Constitution, which was relied upon in early cases to label railways as public property, was not retained in the 1974 Constitution.[8]
We find no need to respond to all of these contentions, since we are of the opinion that the right-of-way servitude held by ICG is private property for which full compensation must be paid. Simply because a business is impressed with a public interest does not mean that all or a part of its facilities are public property which can be taken or damaged without compensation.[9] Language in the early cases that railroad tracks and lines are public property was but obiter dicta, as was pointed out by Justice Summers in dissent in Kansas City Southern Railway Company, supra. We are not constrained to follow same[10] and are of the opinion that such dicta did not establish any well-settled principle of law.[11]
*1140 The Louisiana Civil Code distinguishes between common, public, and private things, La.Civ.Code art. 448. These terms are defined thusly:
La.Civ.Code Art. 449:
“Common things may not be owned by anyone. They are such as the air and the high seas that may be freely used by everyone conformably with the use for which nature has intended them.”
La.Civ.Code Art. 450:
“Public things are owned by the state or its political subdivisions in their capacity as public persons.
“Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial sea, and the seashore.
“Public things that may belong to political subdivisions of the state are such as streets and public squares.”
La.Civ.Code art. 453:
“Private things are owned by individuals, other private persons, and by the state or its political subdivisions in their capacity as private persons.”
A common-sense reading of the above articles indicates that the right-of-way servitude held by ICG is private property rather than public property.
Private things may be subject to public use either by law or dedication, La. Civ.Code art. 455. State Department of Highways v. City of New Orleans, 360 So.2d 624 (La.App. 4th Cir.1978), writ den. 362 So.2d 1121 (La.1978), a case relied upon by the DOTD, is distinguishable on that ground. In that case, the court held that property owned by the City of New Orleans and used for railway and transportation purposes could be taken by the Highway Department without compensation because such property had been held originally by the state and the state's donation to the city provided for a continuing dedication for public use; thus, the tract never left the public domain. Such is not the case here.
We therefore hold that the right-of-way servitude of ICG constitutes private property and can be expropriated only for a public purpose and with just compensation paid. La. Const, art. I, § 4. This holding is bolstered by the fact that ICG obtained its servitude by conveyance rather than by expropriation, as is evidenced by affidavits accompanying ICG’s motion for partial summary judgment. Thus, the trial judge was correct in ordering the DOTD to amend its petition for expropriation to comply fully with the provisions of La.R.S. 48:441 et seq.
We do not express an opinion as to what amount to which the deposit of the DOTD must be increased. We note merely that the $25.00 deposited was but a “pro-forma” amount, since the DOTD believed it could expropriate without compensation. The amount which shall be deposited into the registry of the court must be determined by strict adherence to La.R.S. 48:442(2), requiring an itemized statement of the owner’s loss. Of course, the amount actually needed to provide ICG with just compensation for any loss will be determined in a full trial on the merits.
DECREE
Therefore, for the above and foregoing reasons, the judgment of the trial court ordering the Louisiana Department of Transportation and Development to amend its petition to comply with La.R.S. 48:441 et seq. shall be and is hereby affirmed. The Department of Transportation and Development is allowed thirty days from the rendering of this opinion to amend its petition accordingly or otherwise shall suffer dismissal of its suit. The cause is remanded to the district court for further proceedings not inconsistent with this opinion. Assessment of costs shall await the final outcome of this matter.
AFFIRMED AND REMANDED.

. ICG alleged that $10,000.00 was just compensation only if ICG and the DOTD could reach an agreement for construction which would reserve ICG’s right to use and operate its track and other facilities, to install additional facilities, and to permit others to install similar facilities or structures in the future. If no such agreement could be reached, ICG claimed to be entitled to $10,000.00 plus damages resulting from such loss of use, as may be proved at trial.

. La.R.S. 45:841 reads:
“The Louisiana Public Service Commission shall require the owner, possessor or operator of any railway, railroad, tram road, log road, transportation, irrigation or drainage canal, or syphon, crossing any public road already constructed or which may be constructed, to construct and maintain a suitable and convenient crossing over such public road, the crossing to extend to the limits of the right of way, or fifty feet from the center of such railway, railroad, tram road, log road, transportation, irrigation or drainage canal or syphon, in accordance with the standard specifications furnished by the department of highways in respect to such crossings.”

. Art. XIII, § 3 of the 1921 Constitution reads:
“All railroads are hereby declared public highways, and every railroad company shall have the right, with its road, by expropriation, to intersect, connect with, or cross any other railroad, and shall receive and transport the others’ passengers, tonnage and cars, loaded or empty, without delay or discrimination.”

. The Supreme Court expressly distinguished the case of Louisiana Ry & Nav. Co. v. Louisiana Public Service Commission, 165 La. 219, 115 So. 465 (1928). In that case the Supreme Court held that the PSC could not order a railroad to construct a crossing over its fifty-foot strip of land which was adjacent to a railroad right-of-way, but which was not part of the right-of-way itself, since a servitude over this strip had neither been conveyed nor expropriated.

. Justice Moise expressed the same thoughts in his dissent in Illinois Central R. Co., supra.

. La.R.S. 48:382, as amended, reads:
“A. When an existing highway is intersected or proposed to be intersected by a facility or utility used or to be used for the transportation of persons or commodities, as a railway or canal, or when an existing highway is intersected by an artificial waterway for drainage, irrigation or other purposes, the owner of the facility or utility shall provide a means of crossing the highway which in the opinion of the chief engineer of the office of highways is appropriate and adequate and shall provide for the subsequent maintenance and replacement of the crossing in accordance with current maintenance standards.
“B. When a highway is constructed across such an existing facility or utility, the agency constructing or causing the construction of the highway shall provide for the construction of an adequate and appropriate crossing and for the subsequent maintenance and replacement of the crossing in accordance with current maintenance standards.
“C. Failure to correct deficiencies in the maintenance of a crossing described in Subsection A *1139 and Subsection B of this Section within thirty days notice by receipt of registered mail, to the party responsible for maintenance under Subsection A and Subsection B of this Section, either from the office of highways, Department of Transportation and Development, or the district attorney of the parish in which the crossing is located, of such deficiencies shall constitute a misdemeanor, upon conviction of which the owner of the facility shall be fined not less than two hundred fifty dollars nor more than one thousand dollars, plus all costs of court. In the case of railroads, notification shall be made to the registered agent for service of process.”

.Art. I, § 4 of the 1974 Constitution reads:
“Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
“Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken.
“This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes.”

. See Art. XIV, §§ 16-17 of the 1974 Constitution.

. Utilities are also businesses which are impressed with a public interest. In City of Thibodaux v. Louisiana Power & Light Company, 126 So.2d 24 (La.App. 1st Cir. 1960); cert. den. March 13, 1961, this court held that a municipality could expropriate facilities of a utility company within its corporate limits. Although compensation was not at issue, the opinion assumes that such expropriation would require the payment of just compensation to the utility.

. See Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971).

. In fact, Justice Summers in his dissent in Kansas City Southern Railway Company expressed the fear that such gratuitous language *1140 in the majority opinion would, if unchallenged, form the basis of future erroneous decisions, a fear which we hope to allay by our decision herein.