GULOTTA, Chief Judge.
This matter is before us on certiorari granted by this court on August 3, 1987.
Plaintiff-relators seek to enjoin the Registrar of Voters from conducting an annual canvass and purge of the voting rolls of Wards 8 and 9 in Orleans Parish until after the November 21, 1987 general election.[1] The trial judge denied relators’ request for injunctive relief.
In performing the canvass, the Registrar mails printed cards to the names and addresses of the persons registered on the voting records. Those persons whose cards are returned undelivered as addressed are then sent a second notice, called a “letter of irregularity”, and a list of their names is published in the newspaper to notify them to prove the correctness of their registration within three days or be cancelled from the voting records. See LSA-R.S. 18:193.
Plaintiffs claim that R.S. 18:192 of the election code mandates that in the month of January the Registrar of Voters shall annually canvass the names of the registrants.[2] According to relators, because the Registrar failed to conduct the canvass as mandated in January and is now attempt *1192 ing to conduct it within relatively close proximity to October primary and November general elections, those persons who are purged from the roles will not have adequate time to re-register, and will be foreclosed from exercising their right to vote in the upcoming elections. Relators argue any canvass in 1987 should be postponed until after the November 21, 1987 election. We find no merit to these contentions.
The office of the Registrar of Voters for the Parish of Orleans is an agency of the State, funded by the New Orleans City Council. Like other State agencies, it is clothed with authority to conduct its business reasonably and properly in accordance with law. As an administrative agency, its decisions will not be distrubed by our courts unless found to be unreasonable, arbitrary or capricious, or characterized by an abuse of discretion. LSA-R.S. 49:964; Southern Pac. Transp. Co. v. Louisiana P. Serv. Com’n, 290 So.2d 816 (La.1974), appeal dismissed 419 U.S. 810, 95 S.Ct. 23, 42 L.Ed.2d 37, (1974); Locke v. Plaquemines Parish Com’n Council, 499 So.2d 1217 (La.App. 4th Cir.1986); Concerned Citizens of Rapides Parish v. Hardy, 397 So.2d 1063 (La.App. 3rd Cir.1981), writ denied 404 So.2d 274 (La.1981).
The threshold question before us, therefore, is whether the Registrar’s actions in commencing the canvass on January 27, 1987 and completing it in subsequent months are unreasonable, capricious or an abuse of discretion in the discharge of his duties to protect the integrity of voter registration in Orleans Parish.
In this connection, A.E. Papale, the Registrar of voters for the Parish of Orleans testified that it was “impossible” to commence and complete the 1987 canvass more expeditiously because his office was compelled to move to a new location on December 29 and 30, 1986. According to Papale, the new office was in a state of confusion and “chaotic”, reducing the ability of his staff to function. Papale also stated that a special election on January 17,1987 and the handling of absentee voting for that election had diverted efforts of his office from the canvass. The Registrar further pointed out the canvass was restricted because full computer service was not immediately operative in the new office. According to Papale, the office did not become fully operational until March 24, 1987.
Julia Nagel, an employee in the Registrar’s office for approximately 14 years, explained that in conformity with LSA-R.S. 18:191, 192 and 193, the City was divided into four areas for canvassing purposes over a four year period. Wards 1 through 7 were canvassed in the first year, Wards 8 and 9 in the second, Wards 10 through 14 in the third, and Wards 15 through 17 in the fourth. On this rotational basis, Wards 8 and 9 were scheduled for canvassing in 1987.
Nagel stated that the Registrar’s office was notified on December 17, 1986 that it would be moving its offices on December 29,1986. She corroborated the Registrar’s testimony that the office was in chaos as a result of the move and that only two of the eight computers were operative. Her recollection was that the computers were completely operative on March 16, 1987.
On January 27, 1987, the Registrar requested canvassing cards from Baton Rouge and received them on February 2, 1987. On February 10, 1987 the cards were mailed to the voters in the 8th and 9th Wards. Between February 2 and February 10, employees of the Registrar’s office were checking the cards for accuracy. According to Nagel, six or eight weeks are required before the cards are returned to the Registrar by the post office. Nagel testified that approximately three or four months are required to complete the entire canvass.
Nagel explained the canvassing procedure went forward without problem until a newspaper advertisement notifying individuals subject to purge erroneously failed to exclude legal holidays from the three day period. See LSA-R.S. 18:193. This notice went out on May 7. In response to a question why the office did nothing between May 29 and July 2, Ms. Nagel testified that the City Council, by the adoption of a June 4,1987 resolution, sought to have *1193 the Registrar postpone the canvass “until after the November, 1987 general election.” After receipt of the resolution, the Registrar, on June 9, 1987, sought an opinion from the Attorney General regarding the City Council’s request for postponement. On June 15,1987, the Attorney General advised the Registrar that he was required to conduct the canvass and was not permitted to delay it until after the November election.
On July 2, 1987 a temporary restraining order was issued in the trial court restraining the Registrar from doing any acts in furtherance of the canvass. On July 22, 1987 that restraining order was dissolved. This court on August 3, 1987 issued a stay order which was recalled on August 8, 1987.
Considering the above chronology, we cannot conclude that the Registrar acted unreasonably, arbitrarily, or capriciously in conducting the canvass. Any delays that occurred were not of his making but rather involved circumstances over which he had little or no control.
Although plaintiffs claim that the statute as written requires that the canvass be conducted and completed in January or as soon thereafter as possible, the statute is silent as to when the canvass, begun in January, must be completed. The statute’s failure to specify a deadline for completing the canvass has caused, to some extent, the dilemma faced by the litigants and this court. This problem, however, is one that unquestionably addresses itself to the Legislature and not to this court in this ligigation.
However, plaintiffs claim that the Registrar has unreasonably delayed the canvassing process. It is their contention that registered voters in the 8th and 9th Ward will be deprived of the Constitutional right to register and vote if the canvassing process is permitted to continue prior to the October 24 primary and November 21 general elections. According to plaintiffs, this fundamental right to vote far outweighs the State’s interest in voter registration and the statutory requirement for an annual canvass. According to plaintiffs, because of the few remaining days prior to the October 24 primary election, to continue the canvass would have a “chilling effect” on those entitled to have a reasonable time to register. This argument is speculative and unsupported by the record.
Our concern is given the number of persons requiring processing in the canvass prior to the October 24 election and considering the time remaining, whether there exist sufficient time and opportunity for persons affected by the canvass to re-register. If, indeed, there is not reasonable opportunity and time for those persons to re-register, the Registrar cannot be permitted to conduct the canvass prior to the October 24 election. We do not find that to be the case here.
According to Nagel, there are less than 8,000 persons in the affected area who require processing by the registrar to complete the canvass. This part of the canvass relates to persons who may have moved out of the ward or to an address other than that currently registered on the voter rolls. There are also additional persons registered to vote in the affected area who might well be subject to a purge for failing to vote within a four year period as set forth in LSA-R.S. 18:191(A) and B(l), (2).[3] The record is not clear as to this number.
*1194 According to Ms. Nagel, 29 days would have been required to complete the canvass if the temporary restraining order in the trial court had been dissolved. After the trial court dissolved the restraining order on July 22, 1987, the registrar continued with the canvass until stayed by this court on August 3, 1987. In oral arguments in this court, the registrar pointed out that the canvass can be completed in eleven days from the date that this court orders it to continue. Significantly, the registrar’s books will close on September 24, 1987. Considering the evidence, we conclude sufficient time remains for prospective persons affected by the canvass to re-register for the primary and general elections prior to the closing of the books on September 24, 1987.
As noted previously, the number of suspect registrants in the current canvass does not include additional persons who might be subject to purge from the voting records because of their failure to vote within a period of four years. At the time of oral argument, the Registrar had not yet begun the purge of four year non-voters, but the possibility exists that he may conduct this purge and affect additional persons who might desire to re-register. Although it is within his discretion to do so, the exercise of good judgment would seem to dictate that this additional purge should not be undertaken at this time, as it would further complicate the situation. Moreover, the Registrar elected not to cancel any voter registrations in 1986 under the provision of LSA-R.S. 18:191, and we see no compelling reason why he should do so at this time.
In holding that the canvass may continue, we recognize that the acts of the Registrar must be subjected to strict scrutiny insofar as they affect the fundamental right to vote. See Southland Corp. v. Collector of Rev. for Louisiana, 321 So.2d 501 (La.1975). Nonetheless, our Federal and State Constitutions protect the right of a properly registered voter to cast a meaningful vote undiluted by the illegal votes of persons not properly registered. To postpone the canvass in the instant case may allow improperly registered voters to remain on the rolls and vote illegally, thereby defeating the very rights sought to be protected. Considering the circumstances of the instant case, we conclude that permitting the canvass to proceed will not interfere with orderly voter registration nor infringe on the sacred right to vote.
Having so concluded, we recall and set aside our stay order of August 3, 1987. The Registrar of Voters is ordered to proceed with the convass as required in LSA-R.S. 18:192 and 193.
Because of our conclusion, we find no necessity to address the arguments raised by the registrar that plaintiffs are without standing to seek injunctive relief.
Accordingly, the judgment is affirmed.
AFFIRMED.
GARRISON, J., and HERBERT A. CADE, J. Pro Tern., dissent.

. The primary election is to be held on October 24, 1987.

. LSA-R.S. 18:192 provides in pertinent part: A. (1) In January in each parish the registrar of voters shall annually canvass the names of the registrants in one-fourth of the precincts in the parish, so that all of the names of persons registered in each precinct shall be canvassed at least once every four years. However, commencing in 1990 and every fourth year thereafter, parishes and municipalities with a population of five hundred thousand or more, as based on the most recently published federal decennial census, shall not be required to conduct a canvass in January.

. LSA-R.S. 18:191 provides:
A. The registration of any person as provided in this Chapter shall remain in effect for so long as the registration is not canceled for a cause and in the manner set forth in this Chapter.
B. (1) The registrar in each parish shall cancel from the registration rolls the name of any registrant who has not exercised his right to vote in an election held under this Title or other laws of this state within the preceding four years. The cancellation shall be made as provided in R.S. 18:193 and 18:194. How-
ever, the cancellation shall not be made unless the registrant has been registered for the four-year period.
B. (2) If the computer system of registration is in use in a parish, the registrar shall request the person or persons in charge of the computer center to canvass the voter rolls of the parish and notify the registrar of the names of each registrant who has not voted within the four-year period as provided in Paragraph (1) hereof. The information shall be furnished to the registrar within ten days after the request *1194 was made. The registrar shall cancel from the registration rolls the name of any registrant who has not exercised his right to vote within the preceding four years as provided in Paragraph (1) hereof.